**STATE of Tennessee**

v.

**Barry Winfred RITCHIE.**

Supreme Court of Tennessee, at Knoxville.

April 3, 2000.

Michael E. Moore, Solicitor General; Gordon W. Smith, Associate Solicitor General; and Elizabeth B. Marney, Assistant Attorney General, Nashville, TN, for appellant, State of Tennessee.

Larry G. Roddy, Sale Creek, TN, for appellee, Barry Winfred Ritchie.

## OPINION

BARKER, J., delivered the opinion of the court, in which ANDERSON, C.J., and DROWOTA, BIRCH, and HOLDER, JJ., joined.

We granted this appeal to determine whether a petitioner seeking a writ of habeas corpus is entitled to an evidentiary hearing to establish that the convicting court lacked territorial jurisdiction, when the record of the proceedings does not show that the court lacked such jurisdiction. We hold that because the scope of the writ of habeas corpus in Tennessee does not permit inquiry into facts outside of the original trial record, the appellee is not entitled to a hearing to introduce extrinsic evidence collaterally attacking the jurisdiction of the convicting court. Further, because we cannot find any clear and indisputable proof in the record that the Hamilton County Criminal Court lacked territorial jurisdiction to convict and sentence the appellee, we reverse the judgment of the Court of Criminal Appeals and dismiss the appellee's petition for the writ of habeas corpus.

In 1981, a Hamilton County grand jury indicted the appellee, Barry Ritchie, and his co-defendant, James Massengale, for armed robbery and aggravated rape. A jury found each defendant guilty of the charges as alleged, and they were each sentenced to ten years imprisonment for the armed robbery conviction and to life imprisonment for the aggravated rape conviction. The appellee's conviction and sentence were affirmed on appeal by the Court of Criminal Appeals, and this Court denied him permission to appeal on June 27, 1983. One year later, the appellee filed an unsuccessful petition for post-conviction relief alleging various trial and evidentiary errors, and the Court of Criminal Appeals later affirmed the denial of that petition in 1986.[1]

Nine years later, the appellee filed a petition seeking a writ of habeas corpus in the Bledsoe County Circuit Court alleging that the original trial court lacked territorial jurisdiction over the crimes of which he was convicted.[2] The petition alleged that because the crimes were actually committed on property owned by the Tennessee Valley Authority (TVA), the federal courts possessed exclusive jurisdiction to prosecute the crimes alleged in the original indictment. Therefore, because the federal government has exclusive jurisdiction to prosecute offenses committed on TVA property, the appellee argued, the Hamilton County Criminal Court lacked territo-

---

1. This Court denied permission to appeal the judgment of the Court of Criminal Appeals on September 29, 1986.

2. The appellee filed the petition in Bledsoe County Circuit Court pursuant to Tennessee Code Annotated section 29–21–105 (1980), which requires that the petition be filed in the court "most convenient in point of distance to the applicant." The appellee is currently serving his sentence in the Southeastern Tennessee State Regional Correctional Facility in Bledsoe County.

Although the petition actually alleged that the Hamilton County Criminal Court lacked subject matter jurisdiction of the crimes, the Hamilton County Criminal Court, as a court of general jurisdiction, clearly has subject matter jurisdiction to hear prosecutions of rape and armed robbery. Rather, because the appellee alleges in essence that another sovereign has the exclusive power to prosecute the offenses, the issue is really one of territorial jurisdiction. *See* Tenn.Code Ann. § 39–11–103(a) (1997).

rial jurisdiction to convict and punish him for his crimes.[3]

In support of his petition, the appellee submitted three additional pieces of documentation that were not contained in the original record of trial: a map that identified the location of the offenses as occurring on either a tract of land designated as CR 1 or a tract of land designated as CR 1418; a set of deeds showing that each of these tracts was conveyed by Hamilton County to the United States in fee simple;[4] and an easement assigning all rights, privileges, and powers over both tracts from Hamilton County to the City of Chattanooga on March 5, 1992. The appellee also submitted documentation demonstrating that the United States filed a map and a metes-and-bounds description of both tracts with the Hamilton County clerk's office on May 2, 1938. These records, the appellee argued, clearly demonstrated that the Hamilton County Criminal Court lacked territorial jurisdiction to prosecute his offenses.

The circuit court summarily dismissed the appellee's petition without permitting an evidentiary hearing on the issue of territorial jurisdiction. The court held that the issue was controlled by *Massengale v. Mills*, 826 S.W.2d 122 (Tenn.Crim.App. 1991), a case in which the appellee's co-defendant also alleged exclusive federal jurisdiction of the offenses by virtue of TVA's ownership of the land. In *Massen-*

*gale*, the Court of Criminal Appeals denied habeas corpus relief because the petitioner failed to show that "the federal government had exclusive jurisdiction" over the crimes, *id.* at 123, and because the question of exclusive federal jurisdiction could not be raised for the first time in a habeas corpus proceeding, *id.* (citing *Rodman v. Pothier*, 264 U.S. 399, 44 S.Ct. 360, 68 L.Ed. 759 (1924)). Accordingly, the Bledsoe County Circuit Court entered a final order on December 11, 1995, dismissing the appellee's petition.

On appeal to the Court of Criminal Appeals, the appellee argued that the circuit court erred in dismissing the petition without a hearing because the additional records demonstrated that the crimes occurred on lands that were previously ceded to the United States. In examining the issue of territorial jurisdiction, the intermediate court noted that although the location of the crimes in this case was "affirmatively stated in the [original trial] record," the record did not "provide the status of the ownership of the land." The court further noted that "the particular status of the lands where the offenses were committed represents a finding of fact and is beyond the purview of this court." The Court of Criminal Appeals then reversed the dismissal of the petition and remanded the case to the circuit court for an evidentiary hearing to determine the ownership status of the land.[5]

---

**3.** The appellee does not dispute that he committed the crimes of which he was convicted.

**4.** According to the deeds submitted by the appellee at the hearing, Tract CR 1 was conveyed by Hamilton County to the United States, acting through the TVA, on December 28, 1935. Tract CR 1418 was likewise conveyed by Hamilton County to the TVA on May 2, 1938.

**5.** Although the appellee submitted deeds showing that the tracts of land were conveyed to the United States in 1935 and 1938, the Court of Criminal Appeals was concerned that in 1992, Hamilton County granted an easement to the City of Chattanooga over the same tract of land that it previously conveyed. Because the record was unclear "as to how

Hamilton County gained control over the land," the case was remanded to the circuit court to determine "whether TVA transferred rights to the land to Hamilton County at the time of the petitioner's offenses, and if so, what rights were transferred."

The Court of Criminal Appeals also distinguished *Massengale* on the basis that the new evidence submitted with the appellee's petition "indicate that the crimes may have occurred on lands ... under the exclusive jurisdiction of the federal government." Unlike *Massengale*, the court believed that the petitioner in this case could meet the burden of demonstrating exclusive jurisdiction after an evidentiary hearing.

■ The State then sought permission to appeal to this Court on the sole issue of whether "the Court of Criminal Appeals err[ed] in ordering an evidentiary hearing to determine the subject matter jurisdiction of the convicting court where the face of the judgment and the record of the proceedings does not show that the trial court was without jurisdiction." The State argues that because a petitioner is not entitled to habeas corpus relief in Tennessee unless the petitioner can demonstrate from the face of the judgment or record that the conviction is void, an evidentiary hearing to establish facts outside the record is improper and unwarranted. We agree with the State and hold that the appellee in this case is not entitled to collaterally attack his conviction by writ of habeas corpus, when it does not appear from the record that the court of conviction lacked territorial jurisdiction. We therefore reverse the judgment of the Court of Criminal Appeals and dismiss the appellee's petition for the writ of habeas corpus.

## ANALYSIS

At common law, the term *habeas corpus* was a general term referring to several types of writs, all of which varied slightly according to the precise object for which the writ was required. The most common form of the writ of habeas corpus, which was universally known as the "Great Writ," was the writ of habeas corpus *ad subjiciendum*.[6] This "high prerogative

writ" was essentially a writ of inquiry,[7] and it was issued "to ascertain, whether any person is rightfully in confinement or not, and the cause of his confinement; and if no sufficient ground of detention appears, the party is entitled to his immediate discharge." *See* 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1333, at 206 (1833).

Although the Constitution of the United States implicitly grants to the federal judiciary the power to issue writs of habeas corpus, *see, e.g., McNally v. Hill*, 293 U.S. 131, 135, 55 S.Ct. 24, 79 L.Ed. 238 (1934); *Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 95, 19 L.Ed. 332 (1868), there has been some debate whether this implicit power extends to the full scope of the common law, *see Fay v. Noia*, 372 U.S. 391, 405–12, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), *overruled on other grounds, Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). Nevertheless, the federal courts have been given general statutory power, within procedural limitations, to issue writs of habeas corpus for any violation of a right guaranteed by the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3) (1994); *see also Rose v. Hodges*, 423 U.S. 19, 21, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975).[8] Federal courts may also hold a full evidentiary hearing under some circumstances to determine the merits of a petition because claims of detention in violation of the Constitution or law of the United States "[of-

---

**6.** Sir William Blackstone names four other types of habeas corpus writs: habeas corpus *ad respondendum; ad satisfaciendum; ad prosequendum, testificandum, deliberandum;* and *ad faciendum et recipiendum.* 3 William Blackstone, *Commentaries on the Laws of England* 129–32 (Lewis ed.1900). When *habeas corpus* is referred to generically, it virtually always refers to the writ of habeas corpus *ad subjiciendum.*

**7.** A "high prerogative" writ was one which "issu[ed] out of the Court of King's Bench, not only in term time, but in vacation, and [ran] into all parts of the king's dominions." 3 Story, *supra,* § 1335, at 207. The rationale for the writ of habeas corpus being a "high

prerogative" writ was "that the king [was] entitled, at all times, to have an account, why the liberty of any of his subjects [was] restrained." *Id.*

**8.** *See, e.g., Kimmelman v. Morrison*, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (violation of right to effective assistance of counsel is cognizable in habeas corpus proceeding); *Withrow v. Williams*, 507 U.S. 680, 113 S.Ct. 1745, 123 L.Ed.2d 407 (1993) (the failure to receive *Miranda* warnings is cognizable in habeas corpus proceedings); *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979) (discriminatory grand jury selection is cognizable in habeas corpus proceedings).

ten] turn upon the resolution of contested issues of fact." *Wingo v. Wedding*, 418 U.S. 461, 468, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974). When the court permits an evidentiary hearing, the petitioner may introduce proof outside the record through oral testimony, depositions, affidavits, and even through written interrogatories. *See* 28 U.S.C. §§ 2243, 2246 (1994).[9] Indeed, as one commentator has noted, "The statutes, rules, and case law describing the habeas jurisdiction clearly contemplate relitigation of facts. Thus evidentiary hearings play a major, and invariably determinative, role in modern post-conviction practice in the federal forum." Larry W. Yackle, *Postconviction Remedies* § 124, 479 (1981).

■ The federal constitution, however, neither requires that individual states provide state prisoners post-conviction relief through habeas corpus proceedings, nor does it require that these proceedings, if available, assume any particular form. *See Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Although our research reveals that every state does provide some avenue of relief through the writ of habeas corpus, the states have substantial discretion to develop and implement various types of post-conviction review, and the principal post-conviction remedy used in any individual state varies widely. *Id.* For example, the common law writ of habeas corpus is the primary post-conviction method used in California, Virginia, and Texas,[10] while oth-

ers states, such as Mississippi, Illinois, and Pennsylvania, principally use statutory post-conviction hearings. Procedures derived from the 1966 Uniform Post–Conviction Procedures Act are used in Nevada, Idaho, Oklahoma, and South Carolina, though other states such as Florida, Nebraska, and Arkansas use modified versions of the federal habeas corpus act.[11]

Although the principal method of post-conviction relief in Tennessee is through statutory post-conviction hearings, *see* Tenn.Code Ann. §§ 40–30–101 to 40–30–310 (1997), a petitioner may nevertheless also seek the writ of habeas corpus in some limited circumstances. The privilege of the writ of habeas corpus is constitutionally guaranteed by Article I, section 15 of the Tennessee Constitution, which states that "the privilege of the writ of Habeas Corpus shall not be suspended, unless when in case of rebellion or invasion, the General Assembly shall declare the public safety requires it." Although the writ is constitutionally guaranteed, "the practice in regard thereto has been regulated by statute in this state at least since the Code of 1858." *Ussery v.. Avery*, 222 Tenn. 50, 53, 432 S.W.2d 656, 657 (Tenn.1968). The procedures enabling prosecution of the writ are currently codified at Tennessee Code Annotated sections 29–21–101 to 29–21–130 (1980 & Supp. 1999).

Upon initial reading, the statutory grounds authorizing the writ of habeas

---

9. Although amendments to the federal habeas corpus statutes in 1996 restricted the ability of an applicant to seek an evidentiary hearing, a trial court may still hold a hearing if the applicant developed a factual basis of the claim in state court proceedings or if certain other criteria are met. *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, Title I, § 104 (currently codified at 28 U.S.C.A. § 2254(e)(2) (West Supp. 1999)).

10. At common law, the writ of habeas corpus *ad subjiciendum* was not limited to inquiry into the jurisdiction of the committing court, *see Bushell's Case*, 124 Eng. Rep. 1006, 1016 (C.P.1670) (Vaughan, C.J.), and in the states

principally using the common law writ for post-conviction relief, any denial of due process of law could result in the requested relief being granted.

11. *See generally* Alice McGill, Murray v. Giarratano, *Right to Counsel in Post Conviction Proceedings in Death Penalty Cases*, 18 Hastings Const. L.Q. 211, 219 (1990) (citing D. Wilkes, *Federal and State Postconviction Remedies and Relief* at app. A (1987 & Supp. 1989)). Of course, as both authors acknowledge, virtually all states allow post-conviction remedies other than the method principally used. *Id.*

corpus seem quite broad: "Any person imprisoned or restrained of his liberty, under any pretense whatsoever, except in cases [in which the prisoner is detained in custody under federal judicial authority], may prosecute a writ of habeas corpus, to inquire into the cause of such imprisonment and restraint." Tenn.Code Ann. § 29–21–101. Despite the broad language of the statute, however, successful prosecution of the writ in the courts of this state has long been limited to showing that the original judgment of conviction was void due to a lack of jurisdiction by the convicting court or to showing that the sentence has expired. *See State ex rel. Karr v. Taxing Dist. of Shelby County*, 84 Tenn. (16 Lea) 240 (1886); *State v. Galloway*, 45 Tenn. (5 Cold.) 326 (1868).

■ More recently, this Court in *Archer v. State*, 851 S.W.2d 157 (Tenn.1993), closely examined the history of the writ of habeas corpus in Tennessee and reaffirmed that "the reach of the Great Writ is severely restricted in this state...." *Id.* at 158. Unlike the federal writ of habeas corpus which reaches as far as allowed by the Constitution, the scope of the writ within Tennessee does not permit relief from convictions that are merely voidable for want of due process of law. Rather, the writ of habeas corpus will issue in Tennessee "only when ßt appears upon the face of the judgment or the record of the proceedings upon which the judgment is rendered' that a convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence of imprisonment or other restraint has expired." *Id.* at 164 (quoting *Galloway*, 45 Tenn. (5 Cold.) at 336–37).

■ The policy behind not allowing a writ of habeas corpus to issue from a

Tennessee court unless the jurisdictional defect appears in the record of trial is grounded on the strong presumption of validity that attaches to final judgments of courts of general jurisdiction. "[I]t is the settled law of this State, deemed indispensable to that sanctity of judicial proceedings necessary for the public welfare, that domestic judgments of courts of general jurisdiction cannot be collaterally attacked by evidence outside of the record." [12] *Harris v. McClanahan*, 79 Tenn. (11 Lea) 181, 185 (1883). Indeed, at least as far back as 1849, "we have held repeatedly that if a judgment be valid on its face, it cannot be invalidated ... by parol or other proof *dehors* the proceeding." *Witt v. Russey*, 29 Tenn. (10 Hum.) 208, 208 (1849).

■ On several occasions, we have made clear that a petitioner "cannot collaterally attack a facially valid conviction in a habeas corpus proceeding," *see, e.g., State ex rel. Holbrook v. Bomar*, 211 Tenn. 243, 247–48, 364 S.W.2d 887, 888 (1963), and therefore, the original judgment of conviction from which relief is sought must be *void* on its face and not one that is merely voidable. *See, e.g., State ex rel. Newsom v. Henderson*, 221 Tenn. 24, 30, 424 S.W.2d 186, 189 (1968). In *Taylor v. State*, 995 S.W.2d 78 (Tenn.1999), we reiterated that "[a] void judgment is one in which the judgment is *facially invalid* because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired." *Id.* at 83 (citing *Dykes v. Compton*, 978 S.W.2d 528, 529 (Tenn.1998); *Archer*, 851 S.W.2d at 161–64) (emphasis added). In contrast, "[a] voidable conviction or sentence is one which is *facially valid and requires the introduction of proof beyond the face of*

---

12. Although we rely primarily on civil cases to illustrate the presumption of validity that attaches to final judgments, as we made clear in *Bomar v. State ex rel. Stewart*, 201 Tenn. 480, 486–88, 300 S.W.2d 885, 888 (1957), the presumption of validity attaches to final judgments of criminal convictions as well. The rule in this state has long been that in a

collateral attack upon the proceedings of a court of general jurisdiction, it is not necessary that the jurisdictional facts should affirmatively appear upon the face of the record; such facts "will be conclusively presumed." *Pope v. Harrison*, 84 Tenn. (16 Lea) 82, 88 (1885).

*the record or judgment to establish its invalidity." Id.* (citing *Dykes,* 978 S.W.2d at 529; *Archer,* 851 S.W.2d at 161–64) (emphasis added).

▬▬ Although the Court of Criminal Appeals in this case conceded that habeas corpus relief in Tennessee is available only for facially invalid convictions, the intermediate court nevertheless believed that our decision in *Archer* permitted an evidentiary hearing when the petition alleged that the convicting court lacked territorial jurisdiction. We disagree. The intermediate court is certainly correct that an absence of jurisdiction is cognizable in a habeas corpus proceeding, and that if the court of conviction was actually without territorial jurisdiction, then the appellee's conviction is void. Nevertheless, as our cases make clear, a petitioner is not entitled to *habeas corpus relief* unless that petitioner can show from the record or the face of the judgment that the court of conviction lacked jurisdiction or is otherwise void.

In *Bomar v. State ex rel. Stewart,* 201 Tenn. 480, 300 S.W.2d 885 (1957), this Court addressed the issue of whether a petitioner must show from the face of the judgment or the record that the court of conviction lacked subject matter jurisdiction in order to obtain habeas corpus relief. In *Bomar,* the petitioner alleged that the Montgomery County Criminal Court lacked jurisdiction to convict and punish him for kidnaping, armed robbery, and grand larceny because he was only seventeen years old at the time of the judgment.[13]

In denying the writ of habeas corpus, this Court first noted that when a court is one of general jurisdiction, "there is a presumption that nothing shall be intended to be out of its jurisdiction except *that which*

*so appears upon the face of the judgment or in the record of the case in which that judgment is rendered."* [14] *Id.* at 483, 300 S.W.2d at 887 (emphasis added). After finding that the Montgomery County Criminal Court was one of general jurisdiction, this Court denied issuing the writ "because neither of the judgments in this case [n]or the record in which such judgment was rendered by this Court of general jurisdiction discloses any want of authority to pronounce that judgment." *Id.* at 485, 300 S.W.2d at 887. The Court also noted that any proof introduced at the habeas hearing establishing the age of the petitioner at the time of judgment, which was outside the trial record, "should not have been considered." *Id.* at 485, 300 S.W.2d at 888.

Although the reach of the writ of habeas corpus in Tennessee is severely restricted, Tennessee is not alone in prohibiting jurisdictional challenges by means of habeas corpus unless the absence of jurisdiction affirmatively appears from the record of the trial. For example, in *State ex rel. DuFault v. Utecht,* 220 Minn. 431, 19 N.W.2d 706 (1945), the Minnesota Supreme Court held that the writ of habeas corpus could not be used to challenge the territorial jurisdiction of the convicting court where the absence of jurisdiction did not appear on the judgment or in the record of trial. In *Utecht,* the petitioner argued that the court of conviction lacked jurisdiction to try and punish him for robbery because he was an Indian and the crime was committed on an Indian allotment for which a trust patent had been issued. As such, the petitioner argued, jurisdiction over the crime was exclusively vested in the United States, and the judg-

---

13. At the time that *Bomar* was decided, the Juvenile Court was vested with "original exclusive jurisdiction" to try and punish all persons of less than eighteen years of age. *See* 201 Tenn. at 482, 300 S.W.2d at 886 (citing Tenn.Code §§ 37–242, –243).

14. This presumption is reversed in cases of courts of limited jurisdiction. In the case of courts of limited jurisdiction, the proper assertion of jurisdiction must always appear from the record before a presumption of regularity attaches and before a higher court may sustain the proceedings of that court. *See Brewer v. Griggs,* 10 Tenn.App. 378 (1929).

ment of the trial court was therefore null and void.

The Minnesota Supreme Court acknowledged that if the facts as set out in the petition were true, then the state courts would be deprived of jurisdiction because "jurisdiction of state courts does not extend over 'Indian country' except as limited by Indian treaties or federal law." *Id.* at 707. Nevertheless, after an extensive review of federal and state law, the court held that "unless the court's lack of jurisdiction is clear and indisputable from the face of the record, habeas corpus ought not to be granted to review an erroneous determination by a court that it has territorial jurisdiction over the offense." [15] *Id.* at 713. Rather, the court stated, "an applicant for habeas corpus in such a case will be left to his own remedy by writ of error or appeal." *Id.* Because the record did not "clearly and indisputably disclose lack of jurisdiction on the part of the state district court," the court affirmed the motion to quash the writ of habeas corpus.

In *Commonwealth ex rel. Ritchey v. McHugh,* 189 Pa.Super. 515, 151 A.2d 659 (1959), the petitioner pleaded guilty to a charge of statutory rape. In a later petition for the writ of habeas corpus, the petitioner alleged that the criminal court lacked territorial jurisdiction because the crime actually occurred in another county. The Pennsylvania Superior Court acknowledged that as a matter of law, "a writ of habeas corpus will be granted and the conviction set aside" where it appears that the court of conviction lacked jurisdiction. Nevertheless, the court also recognized that

an allegation that a conviction occurred in a criminal court which lacked "jurisdiction" does not necessarily mean habeas corpus is an available remedy. We think the rule applicable in the present case is that, unless the court's lack of jurisdiction is clear and indisputable upon the face of the record, a writ of habeas corpus should not be granted to review an erroneous determination by a court that it has territorial jurisdiction over an offense.

*Ritchey,* 151 A.2d at 661. The court then examined the record of the trial and concluded that "[t]here is nothing on the face of the record which shows lack of jurisdiction in the [criminal court] in the sense that the locus of the crime was not within the county." *Id.* Consequently, the court dismissed the petition for the writ of habeas corpus and remanded the petitioner to custody.

There is also authority for the proposition that courts should be extremely reluctant to hear jurisdictional challenges on a petition for a writ of habeas corpus for public policy reasons alone. In *Commonwealth v. Firestone,* 253 Pa.Super. 577, 385 A.2d 489 (1978), the court stated that defendants should not be allowed to use the writ "in contempt of the authorities" by intentionally withholding the defense of territorial jurisdiction until a more favorable forum in a habeas corpus proceeding could be found. *Id.* at 492 (quoting *Passmore Williamson's Case,* 26 Pa. 9, 29 (1855)). Even in cases where no such intent is evident, the court stated further that "the policy [of refusing to entertain jurisdictional challenges] nonetheless encourages defendants to seek out their de-

---

15. The Minnesota Supreme Court also noted that the general rule was that "[i]n ascertaining a jurisdictional fact the court will pursue its inquiry through the record of the proceedings, and where the court is one of general jurisdiction, habeas corpus can be invoked only where lack of jurisdiction appears on the face of the record." *Id.* at 708 (quoting 39 C.J.S. *Habeas Corpus* § 16). The court further noted that "[t]he tendency of the courts is to

hold that unless the lack of jurisdiction appears clearly upon the face of the record, habeas corpus ought not to be granted to review an erroneous determination by a court that it has territorial jurisdiction over an offense, ... [and] an applicant for habeas corpus, in such a case, will be left to his remedy by writ of error or appeal." *Id.* (quoting 25 Am.Jur. *Habeas Corpus* § 26).

fenses early. We find no reason here to depart from the policy." *Id.*

█ In this case, the Court of Criminal Appeals remanded the habeas corpus petition to the trial court for a hearing at which the appellee could introduce proof beyond the record or judgment to establish the invalidity of his conviction. A remand for such a purpose is inconsistent with more than a century of prior case law interpreting the scope and reach of the writ of habeas corpus in Tennessee, and it is inconsistent with the strong presumption favoring the validity of final judgments. *See, e.g., Pope v. Harrison*, 84 Tenn. (16 Lea) 82, 90 (1885) (stating that courts of record are competent to decide upon their own jurisdiction and cannot be collaterally attacked "by averments or proof to the contrary"). Although the Court of Criminal Appeals correctly stated that "a showing by the petitioner that the court lacked subject matter jurisdiction would render the judgment of the court void," in order to receive *habeas corpus relief*, the petitioner may make this showing only from the original trial record itself.

█ In all cases where a petitioner must introduce proof beyond the record to establish the invalidity of his conviction, then that conviction by definition is merely voidable, and a Tennessee court cannot issue the writ of habeas corpus under such circumstances. Unlike the procedures governing the availability of the federal writ of habeas corpus, our procedures do not contemplate that a petitioner may relitigate facts in a habeas corpus proceeding. Because a conviction is either void on its face for want of jurisdiction, or it is not, the need for an evidentiary hearing in a habeas corpus proceeding should rarely arise, if ever.

█ For these reasons, therefore, we hold that when a judgment of conviction is alleged to be void for want of territorial jurisdiction, that fact must appear clearly and indisputably either on the face of the judgment or in the original trial record before a writ of habeas corpus can issue from a Tennessee court. As the intermediate court noted in its order remanding the case, the trial record does not reveal the ownership status of the lands on which the crimes occurred. Nevertheless, even if the federal government had jurisdiction over the offenses, the record itself does not indicate that the Hamilton County Criminal Court lacked concurrent jurisdiction to punish the appellee for his crimes. Because the record itself does not indicate that the original trial court lacked territorial jurisdiction, we must conclude that the appellee's petition for a writ of habeas corpus should be dismissed.

Our decision today should serve to emphasize the importance of our statutory post-conviction procedures. *See* Tenn. Code Ann. §§ 40–30–101 to 40–30–310. These procedures are more flexible than habeas corpus procedures, and they allow petitioners the benefit of full evidentiary hearings to develop facts outside of the trial record to establish that their convictions are void or voidable due to constitutional infirmity. *Cf. Archer*, 851 S.W.2d at 162–63. Indeed, the very purpose of the post-conviction procedures is to provide some meaningful mechanism by which state prisoners may seek vindication of alleged violations of constitutional rights. *See id.* at 162.

We also note that prior to his petition for a writ of habeas corpus, the appellee in this case took full advantage of the other available routes to challenge the firmness of his conviction. He not only had the benefit of direct appellate review following his trial, but he also had the benefit of an evidentiary hearing in a post-conviction proceeding as well as direct appellate review of that proceeding. It is of some wonder that the appellee has never sought to challenge the territorial jurisdiction of the Hamilton County Criminal Court in any of these venues, especially given the fact that his co-conspirator took full advantage of these opportunities to challenge the

**634**

criminal court's jurisdiction in his post-conviction proceeding. *See Massengale v. Mills,* 826 S.W.2d 122 (Tenn.Crim.App. 1991).[16] Be that as it may, because the appellee is unable to demonstrate from the record that the court of conviction lacked territorial jurisdiction, the appellee is not entitled to habeas corpus relief notwithstanding whatever relief he may have been entitled to in other proceedings.

## CONCLUSION

In summary, we hold that the Court of Criminal Appeals erred in remanding this case to the circuit court for an evidentiary hearing on the issue of whether the convicting court lacked territorial jurisdiction to try and punish the appellee. Because the scope of the writ of habeas corpus in Tennessee does not permit inquiry into facts outside of the original trial record, the appellee is not entitled to a hearing to introduce extrinsic evidence collaterally attacking the jurisdiction of the convicting court. Further, because we cannot find any clear and indisputable proof in the record that the Hamilton County Criminal Court lacked territorial jurisdiction to convict and sentence the appellee, we reverse the judgment of the Court of Criminal Appeals and dismiss the appellee's petition for the writ of habeas corpus.

Costs of this appeal are taxed against the appellee, Barry Ritchie, for which execution shall issue if necessary.

---

16. It is also of some wonder why the appellee waited fourteen years to challenge the jurisdiction of the convicting court. While this fact alone does not directly affect our decision, "long lapses of time greatly strengthen the presumptions in favor of the validity of such court proceedings." *Puckett v. Wynns,* 132 Tenn. 513, 523, 178 S.W. 1184, 1186 (1915).