IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 10, 2004

## KENNETH R. LEWIS v. ROBERT WALLER, WARDEN

**Direct Appeal from the Criminal Court for Davidson County**
**No. 3430    J. Randall Wyatt, Jr., Judge**

---

**No. M2003-02773-CCA-R3-HC - Filed November 10, 2004**

---

In 1991, the Petitioner, Kenneth R. Lewis, pled guilty to second degree murder, and the trial court sentenced him as a Range I offender to twenty-five years in prison. The Petitioner did not perfect a direct appeal. In 2003, the Petitioner filed a petition for habeas corpus relief, which the habeas court summarily dismissed. The Petitioner appeals the order dismissing his petition, contending that: (1) his plea and sentence were illegal; and (2) the habeas court erred when it dismissed his petition without holding an evidentiary hearing. Finding no reversible error, we affirm the habeas court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and NORMA MCGEE OGLE, JJ., joined.

Kenneth R. Lewis, Pro se

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Kathy Morante, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION
### I. Facts

On March 27, 1991, the Petitioner was indicted on one count of premeditated first degree murder, and, on December 4, 1991, he pled guilty to the lesser-included offense of second degree murder. The trial court imposed the recommended sentence of twenty-five years in prison. The Petitioner did not perfect a direct appeal, but he subsequently filed a petition for habeas corpus relief. In his petition, and on appeal, the Petitioner asserts that, during the plea negotiations, Assistant District Attorney Rodney Strong stated that if the Petitioner agreed to accept the plea the State would not take any position opposing the Petitioner's parole. The Petitioner asserts that "inspite [sic] of this agreement, on February 17, 1993, Assistant District Attorney Rodney Strong" wrote a letter

requesting he be notified of any scheduled parole hearings. The facts, that we can piece together from the record and from other opinions in the Petitioner's case, are as follows.

An excerpt from the Petitioner's guilty plea hearing is included as an appendix to the Petitioner's brief. The following occurred:

> MR. STRONG: Your Honor, in this case, No. 186818, [the Petitioner] is charged with first degree murder. After discussions with the family and their approval and then discussions with [the Petitioner's attorney], we have agreed that [the Petitioner] will plead guilty to second degree murder and will receive a sentence of twenty-five years in the Department of Corrections, as a Range I offender.
>
> Had this case gone to trial, the evidence would have shown that this occurred on September 29, 1990. The killing occurred at Frieda's Bar on Wilder Street here in Chattanooga. The evidence would show that during the evening [the Petitioner] was seen at Mitch's Bar which is in another location here in Chattanooga. Mitch's Bar is the location where the victim, Paul Shirley, had an interest in that location [sic]. [The Petitioner] was seen coming into that location, indicated that he was hunting for Paul Shirley. He was seen by two or three people, described by two or three people. One individual who was in Mitch's Bar was able to make an identification out of a lineup of [the Petitioner] as the individual who arrived at Mitch's Bar hunting for Paul Shirley. He also noted that he arrived in a red sports car.
>
> A short time later at Frieda's Bar on Wilder street, again an individual came into the bar where Paul Shirley was located, asked Paul Shirley to step outside. Two or three people saw this individual, some gave a description, one individual was able to eventually make an identification of [the Petitioner] as a result of the lineup that we conducted later during the investigation of this case. That individual initially at the lineup, at the time of the . . . .

The next six pages of the plea hearing are omitted from the Petitioner's brief, but page eight is then included. It shows that the following occurred:

> THE COURT: You understand that. Al[right], did you hear and understand and agree to the sentence that's been recommended here by the District Attorney?
> DEFENDANT: Yes, sir.
> THE COURT: You tell me what you agreed to and what you understood the sentence will be.
> DEFENDANT: Twenty-five years.
> THE COURT: Al[right].
> [DEFENSE ATTORNEY]: We explained to him Your Honor, it's twenty-five years, Range I, standard offender. I believe that's in the plea papers.
> THE COURT: Al[right]. Anything further before I pronounce judgment?

[DEFENSE ATTORNEY]: No, Your Honor. . . .
THE COURT: Al[right], on your plea of guilty and on the evidence as presented, it's the judgment of the Court that you are guilty, . . . of murder in the second degree, you are sentenced to twenty-five years, Range I offender.

Included in the record is a letter dated February 17, 1993, from Assistant District Attorney Strong to the Northeast Correctional Center, where the Petitioner was imprisoned, requesting that he "be notified of any scheduled hearings before the parole board in reference to [the Petitioner]." Further, the letter stated, "For the record, I am opposed to any early release for [the Petitioner] considering the nature of the way he killed the victim . . . ." On February 24, 1994, Assistant District Attorney Strong wrote a letter to the Warden of the Chattanooga Community Services Center objecting to the Petitioner's placement on work release because the Petitioner's crime was "particularly brutal" in that he "shot the victim in the head five (5) times from close range." The letter stated, "As you might expect, the victim's family is highly incensed. It is no wonder that the citizens of this state have lost confidence in the ability of the Department of Corrections to protect them from dangerous offenders." The letter then asked that the Petitioner be returned to a more secure lock-up facility. Subsequently, the Warden wrote a memo to the Petitioner in which he stated that the Petitioner was to be transferred back to prison because of "community objection/District Attorney. Your offense was a serious and violent offense."

The Petitioner filed a petition for post-conviction relief on or about February 18, 1994.[1] In that petition he asserted, in part, that the State violated its agreement not to oppose parole. On July 31, 1995, Assistant District Attorney Strong wrote another letter to the Northeast Correctional Center. In that letter he stated:

I am writing in reference to a letter I sent in [sic] February 17, 1993. In that letter, I indicated our opposition to any early release or parole for [the Petitioner]. Subsequently a post-conviction petition was filed by [the Petitioner] alleging that my letter was in violation of our plea agreement. Apparently he understood through his attorney that the state would not take any position on the parole issue in exchange for his plea to second degree murder and a sentence of twenty five years. Although this was not a part of the plea negotiations, I have entered an agreement with his attorney to write this letter and ask that my earlier letter be set aside to avoid the need for

_____

[1]The date of this petition and some details regarding it are articulated by the Tennessee Court of Appeals decision in Kenneth R. Lewis v. Leonard Mike Caputo, No. E1999-01182-COA-R3-CV, 2000 WL 502833, at *2 (Tenn. Ct. App. Apr. 28, 2000) *no perm. app. filed*, in which the Petitioner sued his defense attorney for breach of contract and malpractice. We note that, in that case, the Petitioner alleged that his defense attorney told him that if he pled guilty to second degree murder he "would be paroled" in seven and a half years less any sentence credits earned and that "parole was guaranteed" because of a "very special agreement entered into by the prosecutor." The Petitioner asserted that his attorney told him that the District Attorney General would not oppose "earlier release and/or parole." Further, the Petitioner contended that this understanding would be a part of the plea agreement and that if the District Attorney General violated this commitment, the Petitioner "would be allowed to withdraw the guilty plea, and proceed to a Jury Trial." Interestingly, the Petitioner never asserted in this case that Assistant District Attorney Strong directly made this promise to him.

additional litigation. I will leave it to the family of the victim to maintain contact with the board with reference to their opposition to parole in all future hearings on this matter.

The Petitioner subsequently withdrew his petition for post-conviction relief. Sometime in 1998, the Petitioner filed a petition to reopen his post-conviction case and a motion to consider post-judgment facts, which the trial court denied. The Petitioner appealed that denial to this Court. Kenneth Russell Lewis v. State, No. 03C01-9802-CR-00054, 1998 WL 743650, at *1 (Tenn. Crim. App., at Knoxville, Oct. 15, 1998), *perm. app. denied.* (Tenn. Apr. 5, 1999). This Court held, in part, that "even though his convicting case counsel's affidavit supports the [P]etitioner's claim that the state agreed not to oppose parole, such a claim does not constitute grounds to reopen his previous post-conviction case." Id.

On September 23, 2003, the Petitioner then filed a petition for habeas corpus relief, in which he alleged that the State violated its agreement not to take a position regarding his parole. Included in the record are affidavits from the Petitoner's trial attorney and his family members, all of whom state that Assistant District Attorney Strong promised to take no position regarding the Petitioner's parole in exchange for the Petitioner's plea to second degree murder. The trial court dismissed the petition, stating:

> The Petitioner alleges that he relied on certain promises made by the State in his decision to enter a plea of guilty to the charge of Second Degree Murder. Specifically, he alleges that the prosecuting attorney promised that the State would not oppose parole, if the Petitioner agreed to enter a guilty plea. The Petitioner further alleges that the State failed to honor the promise by opposing any early release for the Petitioner.
>
> In Tennessee, habeas corpus relief is available only when "it appears on upon the face of the judgment or the record of the proceedings upon which the judgment is rendered" that the convicting court was without jurisdiction or authority to sentence a defendant, or that a defendant's sentence has expired. Archer v. State, 851 S.W.2d 157, 164 (Tenn. 1993); Passerella v. State, 891 S.W.2d 619, 627-28 (Tenn. Crim. App. 1994).
>
> The Court is of the opinion that the Petitioner's claim is not a sufficient basis to warrant relief under habe[a]s corpus relief. The Petitioner merely alleges that a condition of his guilty plea has not been met by the State. The Court does not find that this allegation demonstrates that the Petitioner's sentence has expired or that the convicting court was without jurisdiction to sentence him.

It is from this judgment of the court that the Petitioner now appeals.

## II. Analysis

On appeal, the Defendant contends that: (1) the plea and sentence were illegal; and (2) that the habeas court erred when it dismissed his petitioner without holding an evidentiary hearing. Article I, section 15 of the Tennessee Constitution guarantees its citizens the right to seek habeas corpus relief. In Tennessee, a "person imprisoned or restrained of [his or her] liberty, under any pretense whatsoever . . . may prosecute a writ of habeas corpus to inquire into the cause of such imprisonment . . . ." Tenn. Code Ann. § 29-21-101 (2000). The grounds upon which habeas corpus relief will be granted are very narrow. See State v. Richie, 20 S.W.3d 624, 630 (Tenn. 2000). "Unlike the post-conviction petition, the purpose of a habeas corpus petition is to contest void and not merely voidable judgments." Potts v. State, 833 S.W.2d 60, 62 (Tenn. 1992). Therefore, in order to state a cognizable claim for habeas corpus relief, the petition must contest a void judgment. Id. "A void judgment is one in which the judgment is facially invalid because the court did not have the statutory authority to render such judgment . . . . A voidable judgment is one which is facially valid and requires proof beyond the face of the record or judgment to demonstrate its voidableness." Dykes v. Compton, 978 S.W.2d 528, 529 (Tenn. 1998) (citing Archer v. State, 851 S.W.2d 157, 161 (Tenn. 1993)). Thus, a writ of habeas corpus is available only when it appears on the face of the judgment or the record that the convicting court was without jurisdiction to convict or sentence a defendant, or that the sentence of imprisonment or other restraint has expired. Archer, 851 S.W.2d at 164; Potts 833 S.W.2d 62.

The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. Passerella v. State, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994). Furthermore, the procedural requirements for habeas corpus relief are mandatory and must be scrupulously followed. Archer, 851 S.W.2d at 165. It is permissible for a trial court to summarily dismiss a petition of habeas corpus without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment to indicate that the convictions addressed therein are void. See Passarella, 891 S.W.2d at 627; Rodney Buford v. State, No. M1999-00487-CCA-R3-PC, 2000 WL 1131867, at *2 (Tenn. Crim. App., at Nashville, July 28, 2000), perm. app. denied (Tenn. Jan. 16, 2001). Because the determination of whether habeas corpus relief should be granted is a question of law, our review is de novo with no presumption of correctness. Hart v. State, 21 S.W.3d 901, 903 (Tenn. 2000).

In the case under submission, we conclude that the Petitioner did not meet his burden of showing, by a preponderance of the evidence, that his conviction is void or that the prison term has expired. It is well established that the voluntariness of a guilty plea may not be challenged through an application for writ of habeas corpus, because such judgments are voidable and not void. See Archer, 851 S.W.2d at 164. Therefore, even if we accept as fact the Petitioner's allegations that the State did not abide by its agreement not to oppose parole, an agreement that was not articulated as part of the Petitioner's plea, those facts would, at best, render the judgment against the Petitioner voidable and not void. The trial court did not err when it summarily dismissed the Petitioner's petition.

### III. Conclusion

In accordance with the foregoing authorities and reasoning, we AFFIRM the trial court's judgment in dismissing the petition for habeas corpus relief.

_____
ROBERT W. WEDEMEYER, JUDGE