IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 2, 2025

**DEWAYNE HARRIS v. STEVE UPTON, WARDEN**

**Appeal from the Circuit Court for Hardeman County**
**No. 2025-CR-31     A. Blake Neill, Judge**

_____

**No. W2025-00255-CCA-R3-HC**
_____

In 2018, a Williamson County jury convicted the Petitioner, Dewayne Edward Harris, of joyriding, carjacking, and aggravated robbery accomplished with a deadly weapon, and the trial court sentenced the Petitioner to serve an effective sentence of thirty years of incarceration. The Petitioner filed for post-conviction relief, alleging that he had received the ineffective assistance of counsel. The post-conviction court dismissed the petition, and we affirmed the post-conviction court's judgment. *Harris v. State*, No. M2023-00681-CCA-R3-PC, 2024 WL 4164998, at *1-2 (Tenn. Crim. App. Sept. 12, 2024), *Tenn. R. App. P. 11 application denied* (Tenn. Feb. 21, 2025). The Petitioner then filed a petition for writ of *habeas corpus*, and the trial court entered an order summarily dismissing the petition. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, P.J., delivered the opinion of the Court, in which CAMILLE R. MCMULLEN and JILL BARTEE AYERS, JJ., joined.

Dewayne Edward Harris, Whiteville, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Joshua R. Gilbert, Attorney General's Legal Assistant, pending bar admission; Mark E. Davidson, District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Procedural History**

This case arises from a carjacking and robbery that occurred in July 2017. A Williamson County grand jury indicted the Petitioner and his co-defendants for carjacking

by use of a deadly weapon (Count 1); carjacking by force or intimidation (Count 2), and aggravated robbery accomplished with a deadly weapon (Count 3). The State proceeded under the theory of criminal responsibility.

In our opinion affirming the post-conviction court's dismissal of the Petitioner's post-conviction petition, we summarized the facts as follows:

> Petitioner and three co-defendants, Barry Durene Harris, Jr., Dejon Marquise Gullatt, and Alexzandrea L. Oden, were indicted by a Williamson County grand jury for carjacking with a deadly weapon (count one), carjacking with use of force or intimidation (count two), and aggravated robbery with a deadly weapon (count three). *State v. Harris*, No. M2019-01609-CCA-R3-CD, 2021 WL 673015, at *1 (Tenn. Crim. App. Feb. 22, 2021). Prior to trial, [the] Petitioner's case was severed from Co-defendants Gullatt and Oden, both of whom appeared as witnesses for the State. *Id.* [The] Petitioner filed a pretrial motion to exclude certain evidence, including his prior crimes and gang affiliation and the testimony of non-testifying co-defendants. In response, the State agreed that statements by non-testifying co-defendants would not be introduced and that Petitioner's "gang affiliation [was] not relevant for trial." The agreement did not exclude the use of nicknames. During the trial, several witnesses referred to [the] Petitioner by his gang-related nicknames of "Big Homey" or "Big Whack."

> Trial commenced with the charges against [the] Petitioner and Co-defendant Barry Durene Harris, Jr. The victim testified that a few days prior to the incident, she drove Co-defendant Oden to a residence and then waited in the car with Timothy Marsh, the victim's boyfriend, while Co-defendant Oden went inside. *Id.* After Co-defendant Oden returned with a large package, Co-defendant Oden and Mr. Marsh directed the victim to drive to an address the victim did not recognize. *Id.* Once there, Co-defendant Oden and Mr. Marsh entered with the package and came out approximately thirty minutes later without the package. *Id.* Several days later, the victim and Mr. Marsh were at a bowling alley when a police officer approached the victim and stated that her vehicle had been reported as having been involved in a drug transaction. *Id.* at *2. The victim and Mr. Marsh followed the police officer to the parking lot, where Mr. Marsh was arrested for an outstanding warrant. *Id.*

> The victim asked Co-defendant Oden for help posting bail for Mr. Marsh's release; Co-defendant Oden agreed and told the victim to meet her at Co-defendant Oden's grandmother's house. *Id.* When the victim arrived at Co-defendant Oden's grandmother's house, she had cash for the bail, her cellphone, and Mr. Marsh's cellphone in the vehicle with her. *Id.* Two men

2

approached her vehicle. *Id.* One man, whom she recognized as Co-defendant Gullatt, entered the passenger side of the vehicle, held a gun to the victim's head, "demanded everything that [she] got," and asked about the location of the package. *Id.* The second man approached the driver side door and "grabbed the victim by her hair and pulled her out of the car and began striking her face with his hands." *Id.* After the incident, the victim's sister showed the victim a picture of [the] Petitioner, and the victim identified him as the man who pulled her out of the car and beat her. *Id.* at *3. The victim confirmed [the] Petitioner's identification to City of Franklin Detective Bobby Dilworth. *Id.*

Co-defendants Gullatt and Oden testified about their roles in the days leading up to the incident, which they each stated were at the direction of [the] Petitioner. *Id.* at *4-10. Co-defendant Gullatt testified that on the day of the incident, [the] Petitioner ordered him "to get in the car with the victim and demand the box. If she did not have the box, then [Co-defendant] Gullatt was to 'take her out to the woods' and kill her." *Id.* at *9. Because the victim recognized Co-defendant Gullatt, she unlocked her passenger side door as he approached, and he got in the car and asked her where the package was located. *Id.* Co-defendant Gullatt attempted to convince the victim to drive away, but as the victim did so [the] Petitioner "opened the driver side door, pulled the victim out of the car, 'hit[ ] her with the door of the car' and then punched her." *Id.* The victim ran inside the residence, and [the] Petitioner instructed Co-defendant Gullatt to drive away in the victim's car. *Id.*

Detective Bobby Dilworth responded to the scene and interviewed the victim, who identified two of [the] Petitioner's co-defendants by name. *Id.* Detective Dilworth confirmed that Co-defendant Oden had made a false report of drug activity at the bowling alley. *Id.* at *4. Detective Dilworth obtained a warrant for Petitioner's arrest on the same day as the incident. At trial, trial counsel objected to Detective Dilworth's testimony regarding Co-defendant Gullatt's statement identifying [the] Petitioner, and the trial court sustained the objection. *Id.*

Co-defendant Harris called three witnesses, two of whom were neighbors of Co-defendant Oden's grandmother who had witnessed the incident. *Harris*, 2021 WL 673015, at *10. The third witness, Tena Payne, was the Director of Housing Operations with the Franklin Housing Authority ("FHA"). Ms. Payne stated that the FHA had cameras on the street where the incident occurred and that the cameras retained video for approximately two weeks. She thought the cameras were operational at the time of the incident. The FHA received a request from the Franklin Police Department for the footage of the incident. When Ms. Payne reviewed the footage, she

3

"couldn't see anything." To her knowledge the video had not been preserved. [The] Petitioner did not testify or put on any proof.

The jury convicted [the] Petitioner of the lesser-included offense of joyriding in count one, carjacking as charged in count two, and aggravated robbery as charged in count three. *Id.* at 10. Co-defendant Harris was acquitted of all charges. After the jury announced its verdicts, [the] Petitioner moved for a judgment of acquittal on the aggravated robbery conviction arguing that the jury's verdicts in counts one and three were inconsistent by finding [the] Petitioner not guilty of using a deadly weapon in count one but guilty of using a deadly weapon in count three. *Id.* The trial court reduced the aggravated robbery conviction to robbery and merged all counts, sentencing [the] Petitioner to an effective thirty-year sentence.

On direct appeal, Petitioner argued, among other assertions, that Detective Dilworth's testimony regarding Co-defendant Gullatt's identification of him violated Petitioner's confrontation rights. *Id.* at *18-19. The State also appealed, arguing that the trial court erred in reducing Petitioner's aggravated robbery conviction to robbery and in merging count three into count two. *Id.* at *19-21. Regarding Petitioner's *Bruton* argument, this court noted that trial counsel's objection to Detective Dilworth's testimony was sustained, but trial counsel did not request a mistrial, even after revisiting the issue at the close of the State's proof. *Id.* at *18-19. Further, this court held that trial counsel "did not seek a curative instruction for tactical reasons, thus precluding plain error relief on appeal." *Id.* at *19. This court upheld Petitioner's convictions in counts one and two but found that the trial court erred in reducing the conviction in count three and remanded for sentencing for the aggravated robbery conviction. *Id.* On remand, the trial court imposed an effective thirty-year sentence, and corrected judgments were entered on August 23, 2021.

*Harris v. State*, No. M2023-00681-CCA-R3-PC, 2024 WL 4164998, at *1-2 (Tenn. Crim. App. Sept. 12, 2024), *Tenn. R. App. P. 11 application denied* (Tenn. Feb. 21, 2025).

In his post-conviction petition, the Petitioner contended that his trial counsel was ineffective for failing to investigate, failing to develop a reasonable trial strategy, and failing to object to the use of the Petitioner's nicknames and to testimony regarding statements made by a non-testifying co-defendant. *Id.* at *1. We affirmed the post-conviction court's denial of the post-conviction petition.

The Petitioner then filed a petition for a writ of *habeas corpus*. In the petition, he asserted the following claims: (1) his trial counsel was ineffective for failing to present to the jury the defense of assault against the victim; (2) his trial counsel was ineffective for

failing to object to the jury instructions; (3) the State failed to prove that he acted with the requisite intent to establish criminal responsibility.

The *habeas corpus* court summarily dismissed the petition. It found:

First, [the Petitioner] cannot raise the issue of ineffective assistance of counsel in a habeas corpus petition. Generally, ineffective assistance of counsel claims are raised in post-conviction proceedings because the purpose of a post-conviction proceeding is to challenge "convictions that are alleged to be either void or voidable because of the abridgement of constitutional rights", while the purpose of a habeas petition "is to contest void and not merely voidable judgments." *Potts v. State*, 833 S.W.2d 60,62 (Tenn. 1992). And [the Petitioner] is not entitled to relief on this claim because he is contesting a voidable, not a void, judgment.

Second, [the Petitioner] raised the issue of insufficient evidence in his direct appeal, and "it is fundamental that habeas corpus . . . proceedings may not be employed to raise and relitigate or review questions decided and disposed of in a direct appeal." *Long v. State*, 510 S.W.2d 83, 878 (Tenn. Crim. App. 1974); *see State v. Harris*, . . . 2021 WL 673015, at *13-15 . . . (holding there was sufficient evidence to conviction [the Petitioner] under a theory of criminal responsibility). For these reasons [the] Petitioner's request for habeas corpus relief is denied.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the *habeas corpus* court erred when it dismissed his petition. He maintains only one issue: "there was insufficient evidence presented at trial to establish guilt upon Petitioner for the crimes of carjacking pursuant to criminal responsibility."

Article I, section 15 of the Tennessee Constitution guarantees the right to seek *habeas corpus* relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. §§ 29-21-101, -130. The determination of whether *habeas corpus* relief should be granted is a question of law and is accordingly given *de novo* review with no presumption of correctness given to the findings and conclusions of the court below. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006) (citation omitted); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory limit preventing a *habeas corpus* petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999).

It is the Petitioner's burden to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). In other words, the very narrow grounds upon which a *habeas corpus* petition can be based are as follows: (1) a claim there was a void judgment which was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). "An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)). In contrast, a voidable judgment or sentence is "one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Taylor*, 995 S.W.2d at 83 (citations omitted); *see State v. Ritchie*, 20 S.W.3d 624, 633 (Tenn. 2000). The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

If the trial court determines from a petitioner's filings that no cognizable claim has been stated and that the petitioner is not entitled to relief, the petition for writ of *habeas corpus* may be summarily dismissed. *See Hickman v. State*, 153 S.W.3d 16, 20 (Tenn. 2004). Further, the trial court may summarily dismiss the petition without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment to indicate that the convictions are void. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994), *superseded by statute as stated in State v. Newman*, No. 02C01-9707-CC-00266, 1998 WL 104492, at *1 n.2 (Tenn. Crim. App., Mar. 11, 1998).

We conclude, as did the *habeas corpus* court, that sufficiency of the evidence is not a colorable for *habeas corpus* relief. Challenges to the sufficiency of the evidence are not cognizable in a habeas proceeding. *Durrell v. State*, No. E2022-015410CCA-R3-HC, 2023 WL 4489453, at *3 (Tenn. Crim. App. June 27, 2023), *no Tenn. R. App. P. 11 application filed* (citing *Gant v. State*, 507 S.W.2d 133, 136 (Tenn. Crim. App. 1973)). Accordingly, we conclude that the trial court properly dismissed the petition. The Petitioner is not entitled to *habeas corpus* relief.

### III. Conclusion

After a thorough review of the record and the applicable law, we affirm the *habeas corpus* court's judgment.

s/ **Robert W. Wedemeyer**

ROBERT W. WEDEMEYER, JUDGE

6