# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 11, 2011

## LEVI BATTLE III v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Hickman County**
**No. 10-CV-5030      Jeffrey S. Bivins, Judge**

---

**No. M2010-01670-CCA-R3-HC - Filed February 8, 2011**

---

A Davidson County jury convicted the Petitioner, Levi Battle, III, of possession of twenty-six grams or more of cocaine with intent to sell or deliver, and the trial court sentenced him to thirty years, at 60%, in the Tennessee Department of Correction. The Petitioner filed a petition for habeas corpus relief, in which he alleged that his sentence was illegal because he was sentenced outside of his sentencing range. The habeas corpus court dismissed the petition, and the Petitioner appeals the habeas corpus court's judgment. After careful review, we affirm the judgment of the habeas corpus court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, delivered the opinion of the Court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Levi Battle III, pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; Kim Helper, District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### I. Facts
### A. Background

This case arises from the Petitioner's sale of cocaine in August 2002. A jury convicted the Defendant of possession of twenty-six grams or more of cocaine with the intent to sell or deliver, a Class B felony, and he filed a direct appeal with this Court, presenting

only one issue. *State v. Levi Battle, III*, No. M2006-00288-CCA-0R3-CD, 2007 WL 957207, at *1 (Tenn. Crim. App., at Nashville, Mar. 29, 2007), *perm. app. denied* (Tenn. Aug. 13, 2007). The sole issue the Petitioner presented was whether the trial court erred when it denied his motion to suppress. *Id*. In our opinion affirming the trial court's denial of the motion to suppress, we recited the underlying facts as follows:

> This case arises from the discovery of cocaine and crack cocaine in the Defendant's vehicle while in the parking lot of the Music City Motor Inn in Davidson County. The Defendant was indicted for possession with the intent to sell or deliver 300 grams or more of cocaine, a Class A felony. *See* Tenn. Code Ann. § 39-17-417(j)(5). The Defendant filed a motion to suppress, and the trial court held a hearing to determine the validity of the search and seizure of the evidence.
>
> At the motion to suppress hearing, Officer Justin Fox of the Nashville Metropolitan Police Department testified about his encounter with the Defendant on August 22, 2002:
>
>> I was sitting at the Music City Motor Inn on Murfreesboro Road at Fesslers, and I was sitting in a parking lot, which is a high drug and prostitution area. I mean, it was shut down due to that [shortly after this incident occurred].
>>
>> I was sitting there observing vehicles and people and I observed the [D]efendant . . . sitting in his vehicle [for about five minutes] at which point I [then] observed him get out of his vehicle, look back at myself and another officer who was sitting there, and he looked at the officers and walked away from his vehicle.
>>
>> At that point, he walks back to his vehicle, looks at the officers, and stood at his door and started to get in and didn't, and walked back away and walked back and then opens his door and does a throwing motion in his car, as though he threw something down in his car.
>>
>> This whole time, he is watching the officers. He then walks away from his car, starts walking back towards the stairwell, which goes up to the second level. The whole time, he keeps looking over at us. He walks up the stairs, doesn't talk to

-2-

anybody, doesn't make an effort to go to the office, walks up to the second level, doesn't stop at a door, knock on a door or nothing, starts-keeps-like when he gets to the top level, he is walking back towards the back, which it levels back out where you don't have to take stairs. Just the road goes up to it. He is still looking at the officers, still doesn't talk to anybody, doesn't stop at any room or anything. He keeps going, walking back. He is still looking back at us like this, at which point he comes to the level part up on the top, which is well, you know, a well amount of ways from the office, because the office was back up front.

At that point in time, he was about to make it around the side of the thing, of the building near the back to where I couldn't see, so I pulled up there. I get out. I said, come here. I asked him if he is staying there. He says no. I like [sic] do you have a buddy here? At which time, he said-at first, he said no, and then he looked around and he said yeah, that guy over there.

Security came over there. The guy who he had said didn't know who he was. Security came over and said there is a trespass waiver on file. If he ain't got a room here, he is trespassing at which point, I placed him into cuffs. I sat him there. I got his ID out after I patted him down. All he had on him was some money he said that he had. I got his ID, ran him through warrants. He didn't have warrants. I ran him through his history. He had a history of not going to court at which point I then walked him back down to where his car was because I had seen him throw something down, and at that point in time, the doors were closed. They weren't locked, but I looked in the vehicle. Yes, there was a mild tint on it. You could still see. It was lit up. You could see two plastic baggies, and one large baggie over on the passenger side seat of a rock substance.

At that time, I turned on my flashlight to look in there at it, at which time it was what I observed. I then opened the vehicle and extracted the items.

There was two plastic baggies right there where the gear shifter was, and then there was the large plastic baggie, and also

a Crown Royal bag which had other baggies in it.

I believe it was 308, approximately 307 or 8 grams of crack cocaine, and the rest was powder cocaine. And it did field test positive for a cocaine base.

The Defendant also testified at the motion to suppress hearing regarding the events bringing rise to the indictment:

Well, I was going down Murfreesboro Road. I was going to go get me a room, and as I got right there at McDonald's, Mr. Fox got behind me. I was headed to the hotel anyway, so I didn't pay no attention. I just went on to the room, so I pulled in my car. He parks over to the side. I get out of my car. I walk up the steps. I look back. My lights are on, so I go back and cut my lights off.

I walk up. I was going to go and check out if this way, if this place is worth me getting a room, because I've never been there before or anything before I knew anything about it, so before I could get to the top of the hill, Mr. Fox pulls up. He says what are you doing trespassing? I said I'm not trespassing. I'm fixing to get me a room. He said, no, you are trespassing. What you got in that car? I said ain't nothing in my car. What my car got to do with this? He said, well, are you going to give me permission to search that car? I said, no, do you have a search warrant? He said, no, and he snatched my keys out of my hand, put me in the car, doesn't read me no rights, don't tell me I'm under arrest or anything, and he pulls back down to my car, so by this time, I guess the security man comes. I hear him ask him is there any kind of way he could get me for trespass, and he said, yeah, I guess if he don't have a room, so he goes and looks around my car and around my car. I guess it's like, what, 10:30, eleven o'clock that night. It's real dark. He says he sees something sitting on my seat. I was already sitting in the car, but I wasn't handcuffed or anything, so he comes back and tells me I'm under arrest . . . .

Along with his explanation of the events, the Defendant also testified that the tinting on the windows of his car was very dark, "like a limousine,"

and would not allow anyone to see inside the vehicle as Officer Fox claimed he did. The Defendant also testified that he lived about seven to eight miles from the motel, that he was seeking a motel room because he and his wife were arguing. He admitted that he may have passed many motels between his home and the Music City Motor Inn but stated that he chose this motel because "you can just jump on the Interstate and get off at Fessler's Lane."

After hearing the evidence, the trial court orally denied the Defendant's motion to suppress . . . .

*Battle*, 2007 WL 957207, at *1-2.

The Petitioner then filed a petition for post-conviction relief in which he alleged that he received the ineffective assistance of counsel at trial. The post-conviction court dismissed the petition, and this Court affirmed that dismissal. *State v. Levi Battle, III*, No. M2009-00949-CCA-R3-PC, 2010 WL 1930953, at *1 (Tenn. Crim. App., at Nashville, May 12, 2010), *perm. app. denied* (Tenn. Oct. 13, 2010).

The Petitioner then filed a petition for habeas corpus relief, which is the subject of this appeal, in which he alleged that his sentence was illegal because he was sentenced outside of the sentencing range applicable to him. The State filed a motion to dismiss the petition, alleging that the Petitioner failed to adhere to the strict procedural requirements of the habeas corpus statute. The State further argued in its motion that none of the Petitioner's factual allegations, even if proven, would establish that the Petitioner's judgment was void or his sentence had expired. The habeas corpus court granted the State's motion to dismiss, and the Petitioner appeals that judgment.

## II. Analysis

On appeal, the Petitioner contends first that he did in fact comply with the procedural requirements of the habeas corpus statute when he submitted his habeas corpus petition. He further asserts he is entitled to habeas corpus relief because that the trial court directly contravened state statute by improperly sentencing him as a career offender. The State counters that the Petitioner failed to comply with procedural requirements of the habeas corpus statute and, further, that he has failed to demonstrate that the judgment against him is void or that his sentence is illegal.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. §§

29-21-101 (2006). The determination of whether habeas corpus relief should be granted is a question of law and is accordingly given de novo review. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory limit preventing a habeas corpus petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999). It is the burden of the petitioner to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). In other words, the very narrow grounds upon which a habeas corpus petition can be based are as follows: (1) a claim there was a void judgment which was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). "An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)). In contrast, a voidable judgment is "one that is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Taylor*, 995 S.W.2d at 83; *see State v. Ritchie*, 20 S.W.3d 624, 633 (Tenn. 2000).

If, after a review of the habeas petitioner's filings, the habeas corpus court determines that the petitioner would not be entitled to relief, then the petition may be summarily dismissed. T.C.A. § 29-21-109; *State ex rel. Byrd v. Bomar*, 381 S.W.2d 280 (Tenn.1964). Further, a habeas corpus court may summarily dismiss a petition for writ of habeas corpus without the appointment of a lawyer and without an evidentiary hearing if nothing on the face of the judgment indicates that the convictions addressed therein are void. *Passarella v. State*, 891 S.W.2d 619 (Tenn. Crim. App. 1994).

## A. Failure to Adhere to Procedural Requirements

The Petitioner contends that trial court improperly dismissed his petition based upon a failure to adhere to the procedural requirements of a habeas corpus petition because "along with his petition there was attached a copy of his judgment order." The State maintains that the Petitioner's petition was properly dismissed because he failed to attach to his petition the judgment by which he was restrained or give a reason for its absence.

The procedural requirements for habeas corpus relief are mandatory and must be scrupulously followed. *Summers v. State*, 212 S.W.3d 251, 260 (Tenn. 2007); *Hickman*, 153 S.W.3d at 19-20; *Archer*, 851 S.W.2d at 165. For the benefit of individuals such as the Petitioner herein, our Legislature has explicitly laid out the formal requirements for a petition for a writ of habeas corpus at Tennessee Code Annotated § 29-21-107:

(a) Application for the writ shall be made by petition, signed either by the party for whose benefit it is intended, or some person on the petitioner's behalf, and verified by affidavit.

(b) The petition shall state:

> . . . .

> (2) The cause or pretense of such restraint according to the best information of the applicant, and if it be by virtue of any legal process, a copy thereof shall be annexed, or a satisfactory reason given for its absence;

> . . . .

"A habeas corpus court *may* properly choose to dismiss a petition for failing to comply with the statutory procedural requirements . . . ." *Summers*, 212 S.W.3d at 260 (emphasis added); *Hickman*, 153 S.W.3d at 21.

In the case under submission, the Petitioner's petition, filed June 17, 2000, comprises the first twenty-seven pages of the technical record. The attachments to the Petitioner's habeas corpus petition include: (1) an affidavit that the petition is filed on his behalf; (2) an affidavit that he has filed no other claims or lawsuits; (3) the State's notice of enhanced punishments; (4) a chart of sentence ranges and release eligibility dates; (5) a copy of a Federal case purportedly supporting the Petitioner's petition; (6) a motion by the Petitioner to modify his sentence; (7) a letter from the Petitioner to the Petitioner's attorney dated January 19, 2006; (8) a letter from the Petitioner to the Petitioner's attorney dated January 31, 2006; and (9) an affidavit of indigency. The attachments do not include a copy of the judgment by which the Petitioner is restrained  The Petitioner, however, attached a copy of this judgment to his notice of appeal. The habeas corpus statute clearly requires that the judgment be attached to the habeas corpus petition, and this failure, in and of itself, is a sufficient basis upon which the habeas corpus court may summarily dismiss the petition. *See Summers*, 212 S.W.3d at 260; *Hickman*, 153 S.W.3d at 21.

While this alone would be a sufficient basis to dismiss the petition, it is not clear from the final order whether, in fact, the habeas corpus court dismissed the petition based upon the Petitioner's failure to attach the judgment or based upon the fact that the court found that the petition lacked merit. The final order dismissing the petition, which was drafted by the State, reads:

> This case came before the court for review upon the petition for writ of

habeas corpus and the respondent's motion to dismiss, after which the Court is of the opinion that the respondent's motion is well-taken and should be granted . . . .

Handwritten by the judge at the end of that sentence is "for *all* the reasons set forth in the Motion," presumably referring to the State's motion to dismiss. (emphasis added). The State's motion to dismiss argued, first, that the Petitioner failed to follow the procedural requirements of the habeas corpus statute and, second, that the petition should also be dismissed because the "petition has not alleged any grounds which could potentially result in a void judgment or expired sentence." Because the trial court stated that it was dismissing the Petitioner's petition for "all" the reasons enumerated in the State's petition, we must now turn to address whether the Petitioner's petition presented any grounds that would entitle him to habeas corpus relief.

### B. Merit of the Habeas Corpus Petition

The Petitioner, citing *Edwards v. State*, 269 S.W.3d 915 (Tenn. 2008), asserts that the trial court improperly classified him as a Career Offender and, therefore, improperly sentenced him outside his proper sentencing range, that of a Range II Offender. The State counters first that there is an inadequate record for review because the Petitioner failed to attach any documentation of his prior convictions apart from the State's notice to seek enhanced punishment. Further, the State asserts that the Petitioner's challenge to his offender classification is not a proper basis for a claim for habeas corpus relief.

The State is correct that the only documentation provided by the Petitioner in support of his argument is the State's notice to seek enhanced punishment. The State's notice to seek enhanced punishment is not a certified copy of the Petitioner's previous convictions and may not include all of the Petitioner's previous convictions. Therefore, this Court cannot base its determination of whether the Petitioner was properly classified as a Career Offender on this document. Because the record does not otherwise establish the number and offense levels of the Petitioner's previous convictions, we simply cannot determine, based upon the record, whether the Petitioner does, in fact, qualify as a Career Offender.

In the event of further review, we note that the law is settled that, even if the Petitioner were improperly classified, he would not be entitled to habeas corpus relief. In *Edwards*, the Tennessee Supreme Court addressed whether a petitioner was entitled to habeas corpus relief in the event he had been improperly classified as a Persistent Offender by the trial court for purposes of sentencing. 269 S.W.3d at 925. In that case, the petitioner had participated in a burglary of a car dealership, and the trial court sentenced him on the burglary conviction, as a Persistent Offender and imposed a Range III, nine-year sentence. The Supreme Court

held, "After careful consideration we conclude that, even assuming the trial court erroneously classified [the petitioner] as a persistent offender for sentencing, this non-jurisdictional error renders the judgment voidable, not void, and does not entitle [the petitioner] to habeas corpus relief." *Id*. at 915. The Court noted that its holding comported with other holdings by our Court. *Id*. at 925 n.8[1]

In accordance with the *Edwards* holding, and the previous holdings of this Court, we conclude that, even were the Petitioner to prove he was improperly classified, his judgment would not be rendered void. He would not, therefore, be entitled to habeas corpus relief.

---

[1]The *Edwards* Court cited the following cases: *Jasper Lee Vick v. State*, No. W2006-02172-CCA-R3-HC, 2008 WL 80580 (Tenn. Crim. App., at Jackson, Jan. 8, 2008) (describing petitioner's challenge to his Multiple Offender classification was not cognizable in a habeas corpus proceeding), *no Tenn. R. App. P. 11 application filed*; *Timothy E. Higgs v. State*, No. E2005-02712-CCA-R3-HC, 2006 WL 3628074 (Tenn. Crim. App., at Knoxville, Dec. 14, 2006) (affirming summary dismissal of Higgs's petition challenging his Persistent Offender classification on the grounds that he lacked the requisite number of prior convictions to qualify as a Persistent Offender), *perm. app. denied* (Tenn. Mar. 12, 2007) ; *Dwayne E. Anderson v. Bell*, No. M2006-01223-CCA-R3-HC, 2006 WL 3290826 (Tenn. Crim. App., at Nashville, Nov. 13, 2006) (affirming summary dismissal and stating that the petitioner's challenge to his Career Offender classification would at most render his twelve-year sentences voidable, not void), *perm. app. denied* (Tenn. Jan. 29, 2007); *Jubal Carson v. Mills*, No. W2005-00745-CCA-R3-HC, 2006 WL 16306, at *5 (Tenn. Crim. App., at Jackson, Jan. 4, 2006) (holding that any error in classifying the petitioner for sentencing purposes would render the resulting judgments merely voidable, not void, and not subject to attack in habeas corpus), *no Tenn. R. App. P. 11 application filed*; *Robert L. Moore v. Turner*, No. W2005-01995-CCA-R3-HC, 2006 WL 473725 (Tenn. Crim. App., at Jackson, Feb. 28, 2006) (affirming summary dismissal and stating that the petitioner's challenge to his Career Offender classification would render his thirty-year sentence voidable, not void), *no Tenn. R. App. P. 11 application filed*; *Gregory Scott Spooner v. State*, No. E2004-02160-CCA-R3-HC, 2005 WL 1584357 (Tenn. Crim. App., at Knoxville, July 7, 2005) (affirming summary dismissal of a habeas corpus petition and stating that petitioner's claim that he lacked the requisite number of prior convictions to support his Multiple Offender classification would render the judgment voidable, not void), *perm. app. denied* (Tenn. Dec. 5, 2005); *Quentin Lewis v. Parker*, No. W2004-00465-CCA-R3-HC, 2004 WL 3021127 (Tenn. Crim. App., at Jackson, Dec. 30, 2004) (opining that an erroneous determination that petitioner's prior record of convictions qualified him for sentencing as a career offender neither results in a void judgment nor establishes that the trial court lacked jurisdiction to sentence the petitioner), *no Tenn. R. App. P. 11 application filed*; *Cecil Collins v. State*, No. 03C01-9805-CR-00192, 1999 WL 544658 (Tenn. Crim. App., at Knoxville, July 28, 1999) (stating that a challenge to the legality of a Range II multiple offender sentence is not cognizable in a habeas corpus proceeding), *perm. app. denied* (Tenn. Nov. 22, 1999); *George Edward French v. Bell*, No. 01C01-9801-CR-00022, 1999 WL 8277 (Tenn. Crim. App., at Nashville, Jan. 12, 1999) (affirming summary dismissal of a habeas corpus petition alleging that the sentencing court lacked authority to classify and sentence the petitioner as a persistent offender because the petitioner lacked the requisite number of prior felony convictions to support the classification), *perm. app. denied* (Tenn. Jun. 21, 1999); *Marvin Anthony Mathews v. Raney*, No. 02C01-9512-CC-00366, 1997 WL 206771 (Tenn. Crim. App., at Jackson, Apr. 28, 1997) (affirming summary dismissal of a habeas corpus petition alleging that the trial court erroneously classified the petitioner as a persistent offender), *perm. app. denied* (Tenn. July 7, 1997)).

The Petitioner is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude the habeas corpus court properly dismissed the Petitioner's petition for habeas corpus relief.

_____
ROBERT W. WEDEMEYER, JUDGE