IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs at Knoxville September 26, 2018

## DEANDRE BLAKE v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lauderdale County**
No. 7016    Joseph H. Walker, III, Judge

_____

### No. W2018-00727-CCA-R3-HC
_____

In 2009, a Shelby County jury convicted the Petitioner, Deandre Blake, of first degree felony murder during the perpetration of aggravated child abuse and first degree felony murder during the perpetration of aggravated child neglect, and the trial court merged the convictions and sentenced the Petitioner to life in prison. This court affirmed the Petitioner's convictions and remanded the case for the entry of a modified judgment. *State v. Deandre Blake*, No. W2010-00468-CCA-R3-CD, 2011 WL 4433651, at *1 (Tenn. Crim. App., at Jackson, Sept. 23, 2011), *perm. app. denied* (Tenn. Feb 15, 2015) (designated not for citation). The Petitioner did not appeal his convictions but did file a timely post-conviction petition, which was denied. This court affirmed. *Deandre Blake v. State*, W2015-01423-CCA-R3-PC, 2016 WL 4060696, at *1 (Tenn. Crim. App., at Jackson, July 27, 2016), *perm. app. denied* (Tenn. Nov. 22, 2016). The Petitioner filed a petition for habeas corpus relief alleging that his counsel was ineffective, and the habeas court summarily dismissed the petition, finding that the Petitioner had failed to comply with the habeas corpus statute by failing to attach his judgments and failing to raise a colorable claim. The Petitioner filed a motion to alter the order dismissing his petition, attaching the judgments and asking the habeas court to consider previous post-conviction testimony. The habeas court denied his motion. On appeal to this court, the Petitioner maintains that he is entitled to habeas corpus relief. After review, we affirm the habeas court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

Deandre Blake, Henning, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Mark E. Davidson, District Attorney General, for the appellee, State of Tennessee.

# OPINION
## I. Facts

This case arises from the Petitioner's killing of his two-year-old daughter on July 28, 2008.[1] The victim's mother, the Petitioner, and their two children lived in a one bedroom apartment. The victim's mother put her to bed in the victim's mother's bed on July 27, noticing no marks or bruises on her, and awoke at 1:36 p.m. to the sound of slapping, and she heard the Petitioner in the bathroom telling the victim, who was potty training at the time, to say "pot." After five or ten slapping sounds, the Petitioner emerged from the bathroom carrying a white belt. The victim came into bed with her, and the Petitioner left the apartment to check the mail. The victim's mother saw bruises on the backs of the victim's legs.

When the Petitioner returned to the apartment with the mail, he told the victim's mother about a letter that necessitated her making a phone call. The Petitioner made a bologna sandwich for the victim and took it into the bedroom where the victim had remained. Afterward, the Petitioner yelled to the victim's mother in an angry voice that the victim was "crumbling up" the bread. While still on the telephone, the victim's mother heard the Petitioner hit the victim about three times and heard the victim crying. The victim's mother went into the room to dress the victim and put the victim's hair in pigtails. While doing so, the victim "slid down" her legs, her head began jerking, and the victim stopped breathing. The victim's mother called out to the Petitioner. The Petitioner called some friends for a ride to the hospital, and then, at the victim's mother's request, he called 911. The victim was pronounced dead at the hospital.

Emergency responders testified at the trial that they found the victim unresponsive with slow breathing. The victim's lungs were clear and her pupils indicated signs of head trauma. The Petitioner was on his cell phone the majority of the time while they were on the scene but Mr. Ringer, an EMT, testified that he "finally did get from the father that he believed the child was choking, he had fed her a baloney sandwich." One responder testified that she was unable to ask questions of the victim's mother because the "baby's father" kept "stepping in between to make sure . . . I couldn't communicate with her."

Memphis Police Department officers investigating this case as a homicide found a white belt in the apartment. Officers interviewed the Petitioner, who said that the victim had soiled herself, and in response he had tried to get her to say "pot," and that when she would not, he disciplined her. Sergeant Kevin Lundy testified that the Petitioner

---

[1] The following facts are summarized from our opinion on direct appeal. *State v. Deandre Blake*, No. W2010-00468-CCA-R3-CD, 2011 WL 4433651, at *1 (Tenn. Crim. App., at Jackson, Sept. 23, 2011), perm. app. denied (Tenn. Feb 15, 2015) (designated not for citation).

admitted disciplining the child again with a belt after she "wadded" the bread of her sandwich. Based upon these oral statements, the officers asked the Petitioner to give a formal written statement, which was read to the jury.

In this typewritten statement, which Sergeant Lundy described as what the Petitioner had stated "word for word," the Petitioner, who had been informed that he was under arrest for homicide, answered "Yes" when asked whether he was responsible for the victim's death. The statement described the Petitioner's actions on July 28, 2008. At about 8:00 a.m., he smoked a "blunt" then went to the house of "one of [his] partner[s]"." When he returned to his apartment, he put the victim on the "pot" and asked her to say "pot." When she did not, he "whipped her legs and she was trying to block with her hands so [he] hit her hands" and hit her "across the back with a belt" when she bent over. The Petitioner stated that he later made a bologna sandwich and gave half of it to the victim. When she tried to lie down with the food in her mouth, he "hit her on the legs with a belt." He stated, "That's when she jumped up and act[ed] like she was going to pass out." He said that, after he could not find anyone to take them to the emergency room, he called 911 and that he followed the 911 operator's telephone instructions for administering CPR.

When asked how many times the Petitioner struck the victim on the back while she was "on the pot," the Petitioner said, "A lot of times." The Petitioner stated that he was in the bathroom with the victim about thirty minutes. The Petitioner admitted that he had struck the victim on the "butt" and the back "[a] lot of times" and that he used the victim's mother's white dress belt, which was approximately one and one-half inches wide.

The medical examiner who performed the autopsy testified that the victim had a number of abrasions and contusions on her body, right forearm, thighs, and lower legs. Some of the contusions were overlapping. The doctor opined that the victim died from multiple blunt force trauma that caused "substantial blood loss in soft tissues." He commented that a child weighing about twenty-five pounds, as did the victim, would have only about a liter of blood in her body and that significant loss of blood through soft tissue injury impairs the body's ability to supply oxygen to vital organs. The doctor was unable to opine whether the belt that had been introduced into evidence was the instrumentality of the injuries because, in part, so many of the contusions were confluent.

Based upon this evidence, the jury convicted the Petitioner of first degree murder committed in the perpetration of aggravated child abuse and first degree murder committed in the perpetration of aggravated child neglect. The two convictions were merged, and the Petitioner was sentenced to life in prison.

3

The Petitioner appealed, and this court affirmed his conviction. *Blake*, 2011 WL 4433651. The Petitioner filed a petition for post-conviction relief in which he alleged that trial counsel was ineffective in (1) failing to present evidence implicating the victim's mother and establishing "a break in the chain of events for felony murder"; (2) conceding guilt during the opening statement; and (3) failing to object to the trial court's imposition of an illegal sentence of life imprisonment without first holding a sentencing hearing. The post-conviction court held a hearing, after which it denied the Petitioner's petition. *Deandre Blake v. State*, No. W2015-01423-CCA-R3-PC, 2016 WL 4060696, at *1 (Tenn. Crim. App., at Jackson, July 27, 2016), *perm. app. denied* (Tenn. Nov. 22, 2016). This court affirmed the trial court's denial of the petition for post-conviction relief. *Id.*

On February 27, 2018, the Petitioner filed a pro se petition for habeas corpus relief. In it, the Petitioner again contended that his trial counsel was ineffective for failing to prepare for his trial, saying that she never investigated his case. The petition stated that he had reported his counsel to the Board of Professional Responsibility and written a letter of complaint to the trial judge. He asserts that the trial judge failed to adequately inquire about his complaints about his trial counsel.

The habeas corpus court summarily dismissed the petition, finding that the Petitioner had failed to comply with the habeas corpus statute by not attaching a copy of the judgment to his petition. The trial court further found that the Petitioner's petition made allegations that, if proven, would not render the judgment void.

The Petitioner then filed a motion to alter or amend the order summarily dismissing his petition, in which he contended that a copy of the judgments sheet were not available when he filed his petition. He attached a copy of his judgments to the motion to alter or amend. The Petitioner also attached a copy of the transcript of his post-conviction petition.

The habeas corpus court denied the motion to alter or amend the petition, finding:

> In the original petition, Petitioner did not attach a copy of the judgment causing the restraint or a copy of the record of the proceedings, per T.C.A. 29-21-107, and the petition is subject to summary dismissal. State ex rel. Wood v. Johnson, 393 S.W.2d 135.

> The petition was dismissed.

> In the motion to alter or amend, he attached a copy of the judgment form. It does not change the result. The petition was dismissed because the sentence of life has not expired, and the court had jurisdiction.

4

The issues raised are not appropriate for habeas relief.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the trial court abused its discretion when it failed to inquire about the Petitioner's request to substitute his counsel. The State counters that this is not a cognizable habeas corpus claim. We agree with the State.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. §§ 29-21-101, -130 (2012). The determination of whether habeas corpus relief should be granted is a question of law and is accordingly given de novo review with no presumption of correctness given to the findings and conclusions of the court below. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006) (citation omitted); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory limit preventing a habeas corpus petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999).

It is the petitioner's burden to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). In other words, the very narrow grounds upon which a habeas corpus petition can be based are as follows: (1) a claim there was a void judgment which was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the petitioner's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). "An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)). In contrast, a voidable judgment or sentence is "one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Taylor*, 995 S.W.2d at 83 (citations omitted); *see State v. Ritchie*, 20 S.W.3d 624, 633 (Tenn. 2000). The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994). Furthermore, the procedural requirements for habeas corpus relief are mandatory and must be scrupulously followed. *Summers v. State*, 212 S.W.3d 251, 260 (Tenn. 2007); *Archer*, 851 S.W.2d at 165.

In this habeas corpus petition, the Petitioner is again attacking whether his trial counsel was ineffective. We note that claims alleging these types of constitutional violations are properly raised in post-conviction proceedings. *See Luttrell v. State*, 644 S.W.2d 408, 409 (Tenn. Crim. App. 1982); *see also Fredrick B. Zonge v. State*, No. 03C01-9903-CR-00094, 1999 WL 1191542, at *1 (Tenn. Crim. App., at Knoxville, Dec. 16, 1999) (stating generally that "[a]lleged violations of constitutional rights are addressed in post-conviction, not habeas corpus, proceedings"), *perm. app. denied* (Tenn. June 26, 2000). The Petitioner sought post-conviction relief, and the denial of relief was affirmed on appeal. *See* T.C.A. § 40-30-102(c) (2012) (The Post-Conviction Procedure Act "contemplates the filing of only one (1) petition for post-conviction relief. In no event, may more than one (1) petition for post-conviction relief be filed attacking a single judgment."). We note that the Petitioner sought post-conviction relief, in relevant part, on the basis that he received the ineffective assistance of counsel and that he was denied such relief. This court has further determined that "[c]laims of ineffective assistance of counsel . . . are inappropriate for habeas corpus review" because such allegations, even if true, would render a judgment voidable, not void. *Passarella*, 891 S.W.2d at 627 ("When a prisoner contends that he was denied the constitutional right to the effective assistance of counsel, the judgment is voidable, not void . . . .").

As stated previously, a writ of habeas corpus may be granted only where it is apparent from the face of the judgment or the record of the proceedings upon which the judgment is rendered that a sentence is illegal. *Stephenson v. Carlton*, 28 S.W.3d 910 (Tenn. 2000). The judgment in this case does not reflect an illegal or void sentence. We conclude that the Petitioner has failed to state a cognizable claim for habeas corpus relief. A trial court may dismiss a pro se habeas petition claiming that an agreed sentence is illegal, without first appointing counsel and holding an evidentiary hearing when the claim is not based on facts apparent from the face of the judgment and pertinent documents from the record of underlying proceedings are not attached to the petition. *Summers v. State*, 212 S.W.3d 251, 261-62 (Tenn. 2007). Accordingly, we conclude that the trial court did not err when it summarily dismissed the Petitioner's petition for habeas corpus relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the habeas corpus court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

6