IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 16, 2014

## GABRIEL KIMBALL v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 4698   J. Randall Wyatt, Jr., Judge**

---

**No. M2014-00182-CCA-R3-HC - Filed December 18, 2014**

---

The Petitioner, Gabriel Kimball, pleaded guilty to rape of a child in Bradley County Criminal Court, and the trial court sentenced him to serve fifteen years. The Petitioner unsuccessfully sought post-conviction relief. *Gabriel Kimball v. State*, No. E2006-01562-CCA-R3-PC, 2007 WL 2757634, at *1 (Tenn. Crim. App. Sept. 24, 2007), *perm. app. denied* (Tenn. Feb. 4, 2008). The Petitioner then sought state habeas corpus relief alleging that the judgment of conviction entered was void and that his attorney rendered ineffective assistance. The habeas corpus court summarily dismissed the petition finding that the Petitioner had failed to raise a cognizable habeas corpus claim. The Petitioner appeals this dismissal, maintaining that the judgment is void and that he received the ineffective assistance of counsel. After a thorough review of the record and applicable law, we affirm the habeas corpus court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL, PJ., and JOHN EVERETT WILLIAMS, J., joined.

Gabriel Kimball, Clifton, Tennessee, pro se.

Herbert H. Slatery, III, Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; Glenn R. Funk, District Attorney General; and Amy Hunter, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

The Petitioner was originally charged in Bradley County Juvenile Court with rape of

a child. The juvenile court ordered the Petitioner to undergo a psychosexual evaluation, which resulted in residential treatment. The Petitioner voluntarily withdrew from the treatment program on October 18, 2003, and the Petitioner's case was transferred to criminal court for the Petitioner to be tried as an adult. In May 2005, the Petitioner pleaded guilty to the charge of rape of a child, and the trial court sentenced him to serve fifteen years.

The Petitioner then sought post-conviction relief, asserting that his attorney ("Counsel") failed to: (1) advise him of his right to appeal the juvenile court's decision to transfer his case to criminal court; (2) submit medical evidence at the transfer hearing; and (3) appeal the trial court's denial of his motion to dismiss. *Gabriel Kimball v. State*, No. E2006-01562-CCA-R3-PC, 2007 WL 2757634, at *1 (Tenn. Crim. App. Sept. 24, 2007), *perm. app. denied* (Tenn. Feb. 4, 2008). In our opinion affirming the post-conviction court's dismissal, we summarized the facts of the Petitioner's case as follows:

> Petitioner testified that he was charged in the Bradley County juvenile court on November 30, 2001, with delinquency regarding a charge of rape of a child. He was seventeen years old at the time. Petitioner acknowledged that he committed the offense against the victim, his five-year-old cousin. Petitioner's parents retained the assistance of attorney Jerry Hoffer to assist Petitioner in the initial hearing. The juvenile court ordered Petitioner to undergo a psychosexual evaluation which resulted in a recommendation that Petitioner enter a residential sex offender treatment program. Petitioner accordingly entered Hermitage Hall on December 24, 2001, pursuant to an agreed order. Petitioner continued to participate in the program after he turned eighteen, but he voluntarily left the program in May 2003 because he said that the Hermitage Hall staff told him that his insurance would no longer pay his expenses at the facility.

> Petitioner said that his father visited him at the facility once, and that they spoke on the telephone a few times. Petitioner said that he did not discuss the status of his case with his father, and he did not know that his juvenile case was still pending. Petitioner said that he did not learn until September 2003, that Mr. Hoffer had withdrawn from the case. Petitioner acknowledged that he was not aware that his father had informed the district attorney's office of his voluntary discharge from Hermitage Hall.

> Petitioner said that the State filed a petition to transfer him to criminal court to be tried as an adult on October 18, 2003, when Petitioner was nineteen years old, and trial counsel was appointed to represent him at the transfer hearing. Petitioner said that his trial counsel met with him once before he was

incarcerated on other unrelated charges in another county and three or four times after his incarceration on those charges. Petitioner discussed the upcoming transfer hearing with trial counsel during those meetings.

Petitioner testified that the transfer hearing was held on February 17, 2005. Petitioner said that he and his trial counsel did not discuss Petitioner's treatment at Hermitage Hall, and trial counsel did not request his medical records from the facility. Petitioner stated that no evidence was therefore presented at the transfer hearing as to how well he did in the program. Petitioner acknowledged that trial counsel filed a motion to dismiss on the basis that Petitioner had been prejudiced by the delay in prosecution, and that the motion was denied.

Petitioner said that the State initially offered to settle the charge if Petitioner agreed to enter a plea to a lesser charge in exchange for a recommended sentence of eight years. Petitioner believed that the offer was withdrawn because of the victim's age. Petitioner said that after his case was transferred to criminal court, he agreed to enter a plea of guilty to the charge of rape of a child in exchange for a recommended sentence of fifteen years. Petitioner believed that if he did not accept the State's offer of settlement, he would be sentenced to twenty-five years. Petitioner said that he did not know that he had the right to appeal the juvenile court's decision to transfer his case to criminal court.

On cross-examination, Petitioner acknowledged that he knew that he would be sentenced to fifteen years as a result of his entry of a plea of guilty. Petitioner conceded that he testified at the transfer hearing. He denied that he asked his trial counsel to set up a meeting with his father so that Petitioner could discuss the offered plea agreement with him. Petitioner insisted that his father "just decided to come down," and said that trial counsel was lying if he testified otherwise. Petitioner denied that trial counsel discussed his treatment at Hermitage Hall with the juvenile judge. Petitioner acknowledged that the juvenile court was aware of his later criminal charges. Petitioner said he entered a plea of guilty to theft of property over $10,000 on December 16, 2003, and was granted judicial diversion. Petitioner said he entered guilty pleas to two more theft charges in Williamson County on October 5, 2004, and was sentenced to three years' incarceration.

Petitioner denied that the delay between the filing of the charge in juvenile court and the transfer hearing was due in part to his other criminal

3

charges. Petitioner said that the delay primarily resulted from the State's failure to communicate with Hermitage Hall. Petitioner insisted that he told people that he was leaving the facility, and that his therapist met with his family concerning his decision.

Petitioner's trial counsel testified that he was originally appointed to represent Petitioner by the juvenile court and represented Petitioner at both the transfer hearing and through the guilty plea submission hearing after Petitioner's case was transferred to criminal court. Trial counsel filed a motion to dismiss in juvenile court on the basis that the State's delay in prosecuting Petitioner was unreasonable. Trial counsel argued that Petitioner was prejudiced by the delay because by the time the transfer hearing was held, the matter was no longer capable of being resolved in juvenile court. Trial counsel said that he believed that the delay was prompted by a lack of communication between the State and Hermitage Hall.

Trial counsel said that he was aware that Petitioner had been ordered by the juvenile court to undergo treatment at Hermitage Hall, and he had a copy of Petitioner's psychosexual evaluation. Trial counsel stated that his conversations with Petitioner and others indicated that Petitioner's medical records from Hermitage Hall would not be favorable to Petitioner's case because they would show that Petitioner had not sufficiently progressed with his treatment at the facility. Trial counsel said that he did not request Petitioner's medical records because he did not want to introduce any adverse evidence. In addition, trial counsel said that Petitioner had left Hermitage Hall of his own accord and not because the facility released him for satisfactorily completing the program.

Trial counsel clarified that the State offered to settle the case prior to the transfer hearing by agreeing to recommend a sentence of eight years in exchange for Petitioner entering a plea of guilty to the lesser charge of aggravated sexual battery and waiving his right to a transfer hearing in juvenile court. Petitioner did not accept the offer, and the transfer hearing was conducted on the original charge of rape of a child. After the case was transferred to criminal court, the State again offered to settle the matter by recommending a sentence of fifteen years, with credit for the time spent at Hermitage Hall, in exchange for Petitioner's plea of guilty to rape of a child. Trial counsel said that he left the decision of whether to accept the offer up to Petitioner. Trial counsel stated that he believed Petitioner would be convicted if he proceeded to trial because Petitioner admitted to the investigating officer

4

and his parents that he had committed the offense and because of the State's other evidence. Trial counsel believed that Petitioner would not be sentenced to the maximum sentence of twenty-five years for this offense, but he did not advise Petitioner that the minimum sentence of fifteen years was a certainty.

Trial counsel stated that he advised Petitioner that if he decided to enter a plea of not guilty and proceed to trial, he could appeal the juvenile court's decision to transfer him to criminal court, but that if he entered a plea of guilty he would lose the right to appeal the issue. Trial counsel said he reviewed with Petitioner all of his rights which were waived as a result of entering his guilty plea, and he never had any concern over Petitioner's ability to understand the guilty plea submission process. Trial counsel said that Petitioner discussed the State's proffered offer of settlement with his father before he decided to accept the negotiated plea agreement.

On November 15, 2013, the Petitioner filed a petition seeking habeas corpus relief. The habeas corpus court issued an order summarily dismissing the petition on January 15, 2014. The habeas corpus court reasoned as follows:

The Petitioner alleges that his conviction is void because the Bradley County Criminal Court lacked jurisdiction to hear the case. He bases this claim on what he asserts is a defective indictment. According to the Petitioner, the indictment is void because it fails to contain the words "true bill" and is not signed by the grand jury foreperson. The Petitioner concedes in the petition that he did not raise this issue in a pretrial motion, and he in fact pleaded guilty to the indicted offense. Therefore, the Court finds that the Petitioner waived his claim that the trial court lacked jurisdiction in his case. Tenn. R. Crim. P. 12(b)(2), (f); *Applewhite v. State*, 597 S.W.2d 328, 330 (Ten. Crim. App. 1979) ("We thus hold that the defendant's failure to make a timely motion to dismiss, thereby depriving the court of the opportunity to allow the correction of the alleged deformity in the indictment, constituted a waiver of a later objection to the omission of the foreman's signature, where it appears on the record that an otherwise valid indictment, endorsed "a true bill," was properly returned into court."). The Court acknowledges that the indictment apparently failed to contain the words "true bill," but the Court finds the Petitioner also waived any objection on this basis.

The petition also [ ] contains claims of ineffective assistance of counsel. Claims of ineffective assistance of counsel are not cognizable claims for habeas corpus relief.

5

It is from this judgment that the Petitioner now appeals.

## II. Analysis

The Petitioner challenges the trial court's summary dismissal of his petition, claiming that the trial court should have appointed counsel and held a hearing. The Petitioner maintains that a faulty indictment deprived the court of jurisdiction, rendering his judgment void. Although not identified as an issue, the Petitioner later in his brief appears to challenge Counsel's representation during the guilty plea process. The State responds that the trial court properly dismissed the petition for failure to state a cognizable claim. We agree with the State.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. §§ 29-21-101, -130 (2012). The determination of whether habeas corpus relief should be granted is a question of law and is accordingly given *de novo* review with no presumption of correctness given to the findings and conclusions of the court below. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006) (citation omitted); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory limit preventing a habeas corpus petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999).

It is the burden of the petitioner to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). In other words, the very narrow grounds upon which a habeas corpus petition can be based are as follows: (1) a claim there was a void judgment which was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). "An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn.1978)). In contrast, a voidable judgment or sentence is "one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Taylor*, 995 S.W.2d at 83 (citations omitted); *see State v. Ritchie*, 20 S.W.3d 624, 633 (Tenn. 2000). The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

It is also permissible for a trial court to summarily dismiss a petition of habeas corpus without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment to indicate that the convictions addressed therein are void. *See Passarella*, 891 S.W.2d at 627; *Rodney Buford v. State*, No. M1999-00487-CCA-R3-PC, 2000 WL 1131867, at *2 (Tenn. Crim. App., at Nashville, July 28, 2000), *perm. app. denied* (Tenn. Jan. 16, 2001).

After our review of the record, we conclude that the habeas corpus court did not err when it summarily dismissed the Petitioner's petition. We acknowledge the Petitioner's concern about the omissions on the indictment. Tennessee Code Annotated section 40-13-105 requires the concurrence of twelve jurors returning an indictment, which, with the concurrence of twelve jurors, "shall be endorsed a 'true bill,' and the endorsement signed by the foreman." This procedure is mandatory. *Applewhite v. State*, 597 S.W.2d 328, 329 (Tenn. Crim. App. 1979). Tennessee Rule of Criminal Procedure 12(2)(B), however, requires a motion alleging a defect in the indictment, presentment, or information to be made prior to trial. Defects which must be challenged prior to trial are those which are not challenges to jurisdiction but "go to matters of form rather than substance." *State v. Nixon*, 977 S.W.2d 119, 121 (Tenn. Crim. App. 1997). "These statutory requirements include, in part, failure of the district attorney general to sign the indictment, the identity of the person charged, the time at which the offense was committed, and the place of the offense." *Id*.

On the other hand, if the error alleged is that the indictment is so defective that it fails to vest jurisdiction in the court or to charge an offense, the motion may be heard at any time during the pendency of the case. Tenn. R. Crim. P. 12(2)(B). A valid indictment is an essential jurisdictional element, and without it, an offense may not be prosecuted. *Wyatt v. State*, 24 S.W.3d 319, 323 (Tenn. 2000). Thus, an indictment which fails to allege an element of an offense is a nullity, and failure to challenge it prior to trial does not result in waiver. *State v. Perkinson*, 867 S.W.2d 1, 6 (Tenn. Crim. App. 1992); *see* Tenn. R. Crim. P. 12(2)(B); *State v. Carter*, 988 S.W.2d 145, 148 (Tenn. 1999). Here, the Petitioner did not object to the indictment prior to trial; therefore, if the defect did not affect the court's jurisdiction, any objection was waived.

In *Applewhite v. State*, this Court concluded that the endorsement and signature on the indictment were mandatory. *Applewhite*, 597 S.W.2d at 329. Nevertheless, the Court went on to hold:

> However, the majority rule appears to be that the failure to endorse or sign the indictment does not deprive the trial court of jurisdiction over the person of the defendant or the offense, so as to make any resulting conviction void. . . . This is because in modern pleading practice (which tends to be less hypertechnical than its common law predecessor), the foreman's signature has

7

come to be viewed as "a procedural safeguard rather than a substantive requisite of an indictment," such that "its presence or absence does not materially affect any substantial right of the defendant; and . . . neither assures to him nor prevents him from having a fair trial."

*Id*. (quoting *Nicholas v. Thomas*, 382 S.W.2d 871, 872 (Ky. 1964)). The Court in *Applewhite* ultimately held that the defendant's failure to make an objection prior to trial to the lack of the foreman's signature had resulted in waiver. *Id*. at 330.

While the *Applewhite* Court wrote that "failure to endorse or sign the indictment" was not a jurisdictional defect, the issue before the Court was a failure of the foreman to sign the document, and the Court noted that there was "an otherwise valid indictment, endorsed 'a true bill,' was properly returned into court ." *Applewhite*, 597 S.W.2d at 329-30. We note here that the language regarding the finding of a true bill lends itself to confusion. While "endorse" generally is synonymous with "sign," *see* BLACK'S LAW DICTIONARY (9th ed. 2009), the statutory reference appears to be to the actual indication on the document that a true bill was found. T.C.A. § 40-13-105 (requiring that the indictment "shall be endorsed a 'true bill,' and the endorsement signed by the foreman").

Although *Applewhite*'s holding related to the foreman's signature, other unreported cases have addressed the indictment's failure to indicate that a "true bill" was returned. In *Guerrero v. Barbee*, a habeas corpus petitioner alleged that the indictment was defective because it was not endorsed "a true bill." This Court rejected the claim that such a defect deprived the trial court of jurisdiction and merited habeas corpus relief. *Robert Guerrero v. Dwight Barbee, Warden*, No. W2012-01873-CCA-R3-HC, 2013 WL 1189462, at *4 (Tenn. Crim. App., at Jackson, Mar. 22, 2013), *no Tenn. R. App. P. 11 application filed*. In *Gregory Hedges v. David Mills, Warden*, this Court likewise concluded that various defects, including the failure to endorse several counts as "a true bill," did not deprive the trial court of jurisdiction. *Gregory Hedges v. David Mills, Warden*, No.W2005-01523-CCA-R3-HC, 2006 WL 211819, at *2 (Tenn. Crim. App., at Jackson, Jan. 26, 2006), *perm. app. denied* (Tenn. May30, 2006). It would appear, based on the cases cited and *Applewhite*, that the errors are not jurisdictional and therefore waived when the Petitioner failed to raise objection prior to trial.

As to the Petitioner's arguments with regard to Counsel's alleged deficiencies, the Petitioner has already challenged Counsel's representations, and this Court concluded that the Petitioner had failed to show prejudice from any of the alleged deficiencies. *Gabriel Kimball v. State*, No. E2006-01562-CCA-R3-PC, 2007 WL 2757634, at *1 (Tenn. Crim. App., at Knoxville, Sept. 24, 2007), *perm. app. denied* (Tenn. Feb. 4, 2008). Moreover, a challenge to Counsel's performance is not a cognizable habeas corpus claim.

Accordingly, we conclude that the Petitioner has failed to show by a preponderance of the evidence that his sentence is void or confinement illegal.  Therefore, the Petitioner is not entitled to relief.

### III.  Conclusion

Based on the foregoing reasoning and authorities, we affirm the judgment of the habeas corpus court.

_____
ROBERT W. WEDEMEYER, JUDGE