IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 1, 2021

**ED HENRY LOYDE v. SHAWN PHILLIPS, WARDEN**

**Appeal from the Circuit Court for Lake County**
**No. 20-CR-10708     R. Lee Moore, Jr., Judge**

_____

**No. W2020-01310-CCA-R3-HC**
_____

A Shelby County jury convicted the Petitioner, Ed Henry Loyde, of rape of a child and aggravated sexual battery. The trial court sentenced him to an effective sentence of thirty-five years. This Court affirmed the judgments on appeal. *State v. Ed Loyde*, No. W2014-01055-CCA-R3-CD, 2015 WL 1598121 (Tenn. Crim. App., at Jackson, Apr. 6, 2015), *perm. app. denied* (Tenn. July 21, 2015). After unsuccessfully filing a petition for post-conviction relief, *Ed Loyde v. State* No. W2018-01740-CCA-R3-PC, 2020 WL 918602 (Tenn. Crim. App., at Jackson, Feb. 25, 2020), *perm. app. denied* (Tenn. July 22, 2020), the Petitioner filed for a writ of habeas corpus, which the habeas corpus court summarily dismissed. After a thorough review of the record and relevant authorities, we affirm the habeas corpus court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR. and J. ROSS DYER, JJ., joined.

Ed Henry Loyde, Tiptonville, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Brent C. Cherry, Senior Assistant Attorney General; Andrew Craig Coulam, Senior Assistant Attorney General; and Amy P. Weirich, District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from inappropriate contact between the Petitioner and the granddaughter of a woman with whom he was living temporarily. For his contact with the granddaughter, he was indicted for aggravated sexual battery and rape of a child.

We summarized the facts presented at his trial on direct appeal as follows:

In September of 2010, the [Petitioner] had been evicted from his residence and needed a place to stay. He was friends with the victim's mother, and she brought the [Petitioner's] plight to the attention of the victim's grandmother, G.H. After speaking with the [Petitioner], G.H. agreed to let him live in her home. At the time, the eight-year-old victim, her mother, her stepfather, her older brother, and her younger brother were all living with G.H. G.H. and the [Petitioner] agreed that the stay would only be for a few months, until the [Petitioner] could "get back on [his] feet," and that he would pay G.H. rent. G.H. had seen the [Petitioner] at church, and he informed her that he was the musical director for two churches and an aspiring preacher.

G.H.'s home had five bedrooms, and the [Petitioner] slept in the living room. He paid rent for the first three months that he lived with G.H. and her family, but he stopped paying rent after November of 2010. G.H. allowed several months to pass before bringing up the issue of the unpaid rent. The [Petitioner] informed her that he had not received a settlement from the bank that he was expecting, and he told G.H. that he would pay rent once he received his settlement. By the end of April of 2011, the [Petitioner] still had not paid G.H. any rent money, and she evicted him from her home.

Shortly after the [Petitioner] left G.H.'s residence, the victim told G.H. that the [Petitioner] had abused her. G.H. immediately called the police. Officer Jamie Lambert testified that he received a call on May 1, 2011, regarding a criminal assault at G.H.'s address. He was the first officer to arrive at G.H.'s residence, and he spoke with G.H. and the victim in the living room. G.H. informed him that the victim had been sexually assaulted. When Officer Lambert spoke with the victim, she appeared "[n]ervous and hesitant to speak with [him]." The victim told Officer Lambert that on April 9, 2011, the [Petitioner] told her to go to her room, lie down, and remove her clothes. The [Petitioner] proceeded to fondle her vaginal area and then penetrated her, and this episode lasted three or four minutes. After the incident, the [Petitioner] instructed the victim not to tell anyone what happened and exited the room. She waited until May 1st to report the incident because until that date, the [Petitioner] still lived in G.H.'s home, and the victim was afraid of what the [Petitioner] might do to her.

After the initial interview with Officer Lambert, G.H. took the victim to the Child Advocacy Center ("CAC"), where a nurse administered a sexual

2

assault exam. The victim also participated in a forensic interview with Letitia Cole. Ms. Cole testified that the victim made an "active disclosure," which is a full disclosure of abuse. The victim identified the [Petitioner] as the perpetrator, and she was able to describe the relationship between herself and the [Petitioner] and used an age-appropriate vocabulary in referring to different body parts. She told Ms. Cole that the incident occurred on the couch in her living room. The [Petitioner] touched her breast and then told her to go into the living room, take her clothes off, and lie down on the couch.

At trial, the victim testified about the incident that occurred with the [Petitioner]. She said that the abuse occurred in G.H.'s living room where the [Petitioner] touched her breast and penetrated her vagina with his penis. The victim was in her home with her two brothers and the [Petitioner]. Her grandmother was also at the home and was asleep in her room. The [Petitioner] instructed the victim's brothers to go outside and play, and he locked the door once they exited the house. When the victim asked if she could go outside as well, the [Petitioner] told her she could not. The [Petitioner] removed the cushions from the couch, placed them on the floor, and asked the victim to help him to clean the couch. He then placed his hand under her shirt and bra and touched her breast for "two or three minutes." The [Petitioner] put the victim on her stomach on the pillows, and he told her to pull down her pants. The victim heard "a buckle of a belt" and "a zipper," and she felt the [Petitioner] on top of her and something "hard" between her legs. The [Petitioner] penetrated her vagina with his penis, and his body "was going up and down." She felt his penis inside of her vagina. The victim estimated that the [Petitioner] was on top of her for "for fifteen to twenty minutes."

The [Petitioner] stopped penetrating the victim when he heard the victim's stepfather at the door. The [Petitioner] started "trying to sweep out the stuff on the couch," and the victim went to her bedroom. When she later went to the bathroom, she felt a "wetness" between her legs that had not been there before the [Petitioner] penetrated her. She testified that she was not bleeding after the incident.

The victim could not recall the exact date of the incident, but she testified that it occurred in April, several weeks before her April 21st birthday. She told her older brother about the abuse, but she did not make a disclosure to anyone else until after the [Petitioner] had moved out of the residence. Her brother testified that the [Petitioner] continued to live with the family for a month after the victim revealed the abuse, but he agreed that

3

it could have been as long as nine weeks.

On cross-examination, the victim testified that she did not tell police officers that the [Petitioner] touched her vagina with his hand or that the incident took place on her bedroom floor and lasted for three or four minutes. She recalled telling Ms. Cole that the incident occurred on the couch instead of on the floor. She remembered telling police officers and the forensic interviewer that the defendant told her to take off all of her clothes, and she agreed that she testified at trial that the [Petitioner] told her only to pull her pants down and that she did not take off all of her clothes.

Dr. Karen Lakin testified as an expert in pediatrics and child sexual assault. She testified that a sexual assault exam was performed on the victim. During the examination, the victim stated that the defendant "raped [her]." She said that the [Petitioner] "stuck his lower part in [her] private part" and touched her breast. Dr. Lakin testified that there were no abnormalities or evidence of injuries were found during the examination. She testified that in "ninety-five to ninety-eight percent" of pediatric sexual assault cases, there were no physical findings of assault. She explained that there were not often physical findings because children often did not disclose the assault immediately after it occurred. Dr. Lakin stated that an increased passage of time between the assault and the examination made it less likely that the examination would produce physical findings consistent with sexual assault. She testified that in cases where the examination occurred more than seventy-two hours after the assault, there was not an attempt to collect DNA evidence because the procedure would be ineffective. She also testified that the vaginal area was able to heal very quickly, meaning that there would be no evidence of an assault if the area were examined several weeks after the assault.

*Loyde*, 2015 WL 1598121 at *1-2. Based on this evidence, the jury convicted the Petitioner of aggravated sexual battery and rape of a child, and the trial court sentenced him to an effective sentence of thirty-five years of incarceration. *Id.* at *3.

The Petitioner unsuccessfully sought post-conviction relief, and subsequently, on April 13, 2020, he filed a petition for a writ of habeas corpus.

In the filing, the Petitioner contended that his conviction for aggravated sexual battery violated the double jeopardy clause because it was a lesser-included offense of rape of a child. The Petitioner asserted that both his convictions, one for rape of a child and one for aggravated sexual battery, stemmed from one single incident. He asserts that his

4

consecutive sentences violate provisions against double jeopardy.

The habeas corpus court summarily dismissed the Petitioner's petition. The court found:

> In this case, the sentences have not expired and the judgments are not void. It is possible that the judgment in count two of the indictment is voidable if, in fact, the only charge was for rape of a child. In this case according to the reported case in the Court of Criminal Appeals, however, it appears that the [P]etitioner committed two separate offenses for which he was convicted and sentenced. The [P]etitioner fails to state a cognizable claim for habeas corpus relief. At best his claim would only involve a voidable issue. The petitioner is, therefore, denied.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that that the habeas corpus court erred when it summarily dismissed his petition because both offenses, child rape and aggravated sexual battery, stemmed from one single incident committed between March 30, 2011 and May 1, 2011. The Petitioner notes that the trial court sentenced him to consecutive sentences for his convictions, and he asserts that it had no jurisdiction to so sentence the Petitioner because the aggravated sexual battery conviction was actually a lesser-included offense of rape of a child. The State counters that, even if the Petitioner's claims were true, he does not present a cognizable claim for habeas corpus relief.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek habeas corpus relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. §§ 29-21-101, -130 (2012). The determination of whether habeas corpus relief should be granted is a question of law and is accordingly given de novo review with no presumption of correctness given to the findings and conclusions of the court below. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006) (citation omitted); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory time limitation preventing a habeas corpus petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999). The grounds upon which a habeas corpus petition can be based are as follows: (1) a claim there was a void judgment which was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000) (citing *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993)).

5

"An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)). In contrast, a voidable judgment or sentence is "one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Taylor*, 995 S.W.2d at 83 (citations omitted); *see State v. Ritchie*, 20 S.W.3d 624, 633 (Tenn. 2000).

The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. *Wyatt v. State*, 24 S.W.3d 319, 322 (Tenn. 2000). It is permissible for a trial court to summarily dismiss a petition of habeas corpus without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment to indicate that the convictions addressed therein are void. *See Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994), superseded by statute as stated in *State v. Steven S. Newman*, No. 02C01-9707-CC-00266, 1998 WL 104492, at *1 n. 2 (Tenn. Crim. App., at Jackson, Mar. 11, 1998), *no perm. app. filed*; *Rodney Buford v. State*, No. M1999-00487-CCA-R3-PC, 2000 WL 1131867, at *2 (Tenn. Crim. App., at Nashville, July 28, 2000), *perm. app. denied* (Tenn. Jan. 16, 2001).

In this case, the Petitioner has failed to prove, by a preponderance of the evidence, that the judgments are void or that his sentence has expired. Both the habeas corpus court and the State correctly note that the Petitioner's claim, which is based on double jeopardy, is not cognizable pursuant to the habeas corpus statute. We have repeatedly held that a violation of principles of double jeopardy does not render a conviction void and, accordingly, occasions no cause for habeas corpus relief. *Tiffany Davis v. Brenda Jones, Warden*, No. M2014-00386-CCA-R3-HC, 2014 WL 3749443, at *2 (Tenn. Crim. App., at Nashville, July 23, 2014) (citing *Joseph L. Coleman v. State*, No. W2013-00884-CCA-R3-HC, at *3 (Tenn. Crim. App., at Jackson, Nov. 25, 2013) ("We reiterate that a double jeopardy claim does not render a judgment void, and thus is not a cognizable claim for which habeas corpus relief can be granted."), *perm. app. denied* (Tenn. Apr. 10, 2014); *Anton Carlton v. State*, No. W2012-02449-CCA-R3-HC, at *4 (Tenn. Crim. App., at Nashville, July 11, 2013) ("Even if this [double jeopardy] claim had some viability, however, it is not cognizable in a habeas corpus proceeding; a conviction that runs afoul of double jeopardy principles is not void and is not subject to habeas corpus relief."), *no perm. app. filed*.

We further note, however, that this court previously reviewed this case and found that the evidence was sufficient to sustain both convictions. We held:

> Viewed in the light most favorable to the State, the evidence shows that the [Petitioner] was alone with the victim in the living room of G.H.'s residence. The [Petitioner] reached his hand underneath the victim's shirt and bra,

placing it on her breast. He then placed her on the ground on couch cushions, instructed her to pull her pants down, and penetrated her. The victim testified that she felt the [the Petitioner] on top of her and felt his penis inside of her vagina. She testified that when she later went to the bathroom, she felt a "wetness" between her legs that was not there before the defendant penetrated her, and she testified that it was not blood. We conclude that the evidence is sufficient to sustain the [Petitioner's] convictions for aggravated sexual battery and rape of a child.

Accordingly, we conclude that the Petitioner did not state a cognizable claim for habeas corpus relief and, therefore, the habeas corpus court's summary dismissal was appropriate.

### III. Conclusion

After a thorough review of the record and the applicable law, we conclude that there was no error and, as such, we affirm the habeas court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE

7