IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2025

**BILLIE JOE CHAPMAN v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. 21-407      W. Mark Ward, Senior Judge**

_____

**No. W2024-01228-CCA-R3-HC**
_____

In 2021, the Petitioner, Billie Joe Chapman, pleaded guilty in separate cases to multiple burglary, vandalism, and weapon charges for which he received an effective sentence of thirteen years of incarceration. The Petitioner filed a petition for post-conviction relief, alleging the ineffective assistance of counsel, and the trial court denied him relief. This court affirmed the denial. *Chapman v. State*, No. W2022-01333-CCA-R3-PC, 2023 WL 5572932, at *1 (Tenn. Crim. App. Aug. 29, 2023), *no perm. app. filed*. Thereafter, the Petitioner filed a petition for writ of *habeas corpus*, and the trial court entered an order summarily dismissing the petition. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which JOHN W. CAMPBELL, SR. and MATTHEW J. WILSON, JJ., joined.

Billie Joe Chapman, Only, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; J. Katie Neff, Assistant Attorney General; Jody S. Pickens, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

This court noted that the State offered the following facts in support of the guilty plea:

[O]n October 1st of 2020, Mr. Joe Moore left his residence . . . in

Madison County, Tennessee, in the morning. He was given a ride by Makayla Burton who at the time was in a relationship with [the Petitioner]. When Mr. Moore arrived back at his house a couple of hours later, he realized that he had some firearms missing from the house and contacted the police.

They found that the back door to Mr. Moore's home had been pried open. There was damage done to the door frame. That's the basis for the vandalism[.]

Initially, Mr. Moore believed he had about five handguns missing. Mr. Moore evidently has a large collection of firearms. It was later determined to be [fifteen] handguns were missing.

[A]t that time on October 1st, Mr. Moore indicated that he thought [the Petitioner] may have been involved in the home invasion due to the fact that [the Petitioner] knew that Mr. Moore would not be at this house for a couple of hours because Mr. Moore was getting a ride with Ms. Burton who, again, was in a relationship with [the Petitioner].

There was video from a nearby church that showed what appeared to be a white male coming from the direction of [the Petitioner's] house going to Mr. Moore's house, but you could not identify the person from that video. So, at that time the police were not able to take [the Petitioner] into custody or speak with him about the matter.

[L]ater that month on October 16th of 2020, the police responded to a burglary at Premier Property Service here in Madison County, Tennessee. They spoke with Currie Byrd who was the supervisor of Premiere Property Service, and he reported that the business had been burglarized. He advised that upon arriving at the building he discovered a large hole had been punched out of the east side of the wall. He also advised that five sets of keys which go to several of the company's vehicles had been stolen during the burglary. The stolen keys were valued at approximately $1,250 and there was, again, damage to the building.

Surveillance cameras on the interior and exterior of the building captured both audio and video of the incident. The cameras captured a subject forcing entry through the Wall of the building and later captured the same subject inside the business.

The footage was reviewed by Currie Byrd and the Operations Manager, Jimmy Stout, who were able to identify the suspect as a former employee, [the Petitioner].

2

Shortly after the initial report, Mr. Byrd found a tool bag containing various tools near a creek just south of the business which advised belonged to [the Petitioner].

[T]his occurred on October 16th. Later, on October 16th, Mr. Currie Byrd went to Wal-Mart and just happened to run into [the Petitioner] at Wal-Mart and Mr. Byrd photographed [the Petitioner]. He was wearing the same clothes at Wal-Mart that he was wearing in the video when the burglary occurred.

. . . .

[B]ased on everything that they found on that case [] they were able to obtain a search warrant for [the Petitioner's] house. When they executed that search warrant, Makayla Burton was at the house, and they spoke with her. In speaking with her, they asked her if she had seen [the Petitioner] with any large amount of guns recently, again referring back to the incident that occurred on October 1st, and she stated that [the Petitioner] had actually sold her parents several firearms earlier in the month. Her parents are Barbara and William Burton. They live in Chester County.

Investigators with the case contacted Chester County Sheriff's Department and asked them to speak with the family at that time. Investigator Seth Preslar with the Chester County Sheriff's Department went to the Burtons' residence and made contact with them. They then proceeded to turn over handguns that they had purchased from [the Petitioner] on October 1st. Again, the same day as the home invasion. They also were able to provide receipts that [the Petitioner] had written with his name and the type of gun stating that he had sold the gun to them at that time on October 1st. The guns were valued at over $2,500 [].

[The Petitioner] does have a prior violent felony offense. The violent felony offense [] is burglary out of Lancaster County, Nebraska, District Court on February 22nd of 1995.

. . . .

[The Petitioner] did give a statement to law enforcement. He denied the home invasion, but he did admit to selling firearms to the Burtons. He denied they were stolen guns and denied the home invasion, but law enforcement was able to confirm the guns were Mr. Moore's. They ran it through a federal database as well as Sadie Lou's Pawn Shop which is the

3

pawn shop where he had purchased several of these firearms and the serial numbers matched the ones that were stolen in the burglary on October 1st of 2020.

*Chapman*, 2023 WL 5572932, at *1-2.

Pursuant to his plea agreement, the Petitioner received an effective sentence of thirteen years for his convictions. Thereafter, the Petitioner filed multiple pleadings, numbering more than thirty filings, the majority of which were summarily dismissed by the trial court. This included a petition for post-conviction relief claiming that his guilty plea had not been knowingly and voluntarily entered, which the trial court denied. The Petitioner appealed, and this court affirmed the denial, as did our supreme court. *Id.*

In the matter herein, the Petitioner filed a petition for writ of *habeas corpus*, claiming that his constitutional rights had been violated, his plea was entered unknowingly, he had received the ineffective assistance of counsel, and the trial court had a conflict of interest. The trial court filed an order dismissing the petition. It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, we discern the Petitioner's issues to be as follows: (1) that his plea was entered involuntarily and without his consent; (2) that the trial court violated the rules of criminal procedure; (3) that the Petitioner's due process rights were violated; and (4) that he received the ineffective assistance of counsel. The State responds that the Petitioner failed to comply with the procedural requirements for *habeas corpus* relief and that he failed to state a colorable claim for relief. The State further responds that the Petitioner's claims have been previously litigated and, therefore, the trial court properly summarily dismissed his petition. We agree with the State.

Article I, section 15 of the Tennessee Constitution guarantees the right to seek *habeas corpus* relief. *See Faulkner v. State*, 226 S.W.3d 358, 361 (Tenn. 2007). Although the right is guaranteed in the Tennessee Constitution, the right is governed by statute. T.C.A. §§ 29-21-101, -130 (2014). The determination of whether *habeas corpus* relief should be granted is a question of law and is accordingly given de novo review with no presumption of correctness given to the findings and conclusions of the court below. *Smith v. Lewis*, 202 S.W.3d 124, 127 (Tenn. 2006) (citation omitted); *Hart v. State*, 21 S.W.3d 901, 903 (Tenn. 2000). Although there is no statutory limit preventing a *habeas corpus* petition, the grounds upon which relief can be granted are very narrow. *Taylor v. State*, 995 S.W.2d 78, 83 (Tenn. 1999).

It is the Petitioner's burden to demonstrate by a preponderance of the evidence that "the sentence is void or that the confinement is illegal." *Wyatt v. State*, 24 S.W.3d 319,

322 (Tenn. 2000). In other words, the very narrow grounds upon which a *habeas corpus* petition can be based are as follows: (1) a claim there was a void judgment which was facially invalid because the convicting court was without jurisdiction or authority to sentence the defendant; or (2) a claim the defendant's sentence has expired. *Stephenson v. Carlton*, 28 S.W.3d 910, 911 (Tenn. 2000); *Archer v. State*, 851 S.W.2d 157, 164 (Tenn. 1993). "An illegal sentence, one whose imposition directly contravenes a statute, is considered void and may be set aside at any time." *May v. Carlton*, 245 S.W.3d 340, 344 (Tenn. 2008) (citing *State v. Burkhart*, 566 S.W.2d 871, 873 (Tenn. 1978)). In contrast, a voidable judgment or sentence is "one which is facially valid and requires the introduction of proof beyond the face of the record or judgment to establish its invalidity." *Taylor*, 995 S.W.2d at 83 (citations omitted); *see State v. Ritchie*, 20 S.W.3d 624, 633 (Tenn. 2000). The petitioner bears the burden of showing, by a preponderance of the evidence, that the conviction is void or that the prison term has expired. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994).

If the trial court determines from a petitioner's filings that no cognizable claim has been stated and that the petitioner is not entitled to relief, the petition for writ of *habeas corpus* may be summarily dismissed. *See Hickman v. State*, 153 S.W.3d 16, 20 (Tenn. 2004). Further, the trial court may summarily dismiss the petition without the appointment of a lawyer and without an evidentiary hearing if there is nothing on the face of the judgment to indicate that the convictions are void. *Passarella v. State*, 891 S.W.2d 619, 627 (Tenn. Crim. App. 1994), *superseded by statute as stated in State v. Newman*, No. 02C01-9707-CC00266, 1998 WL 104492, at *1 n.2 (Tenn. Crim. App., Mar. 11, 1998).

The trial court found that the Petitioner had not fulfilled the mandatory procedural requirements, based on his failure to attach the judgments to his petition as well as his prior petitions. As such, the trial court summarily dismissed his petition. We agree with the court's dismissal based on the Petitioner's failure to follow the procedural requirements of a *habeas corpus* filing as found at Tennessee Code Annotated section 29-21-107(b)(2).

We also conclude, as did the trial court, that none of the Petitioner's claims are colorable for *habeas corpus* relief and have been previously litigated in prior petitions. The State points out, and we agree, that constitutional issues, such as criminal procedure violations, invalid search warrant, and due process violations, as raised by the Petitioner in his brief, create merely voidable judgments, not void judgments, unless the face of the record establishes that the trial court did not have jurisdiction to convict or sentence the Petitioner. *Demonbreun v. State*, No. M2004-03037-CCA-R3-HC, 2005 WL 1541873, at *2 (Tenn. Crim. App. June 30, 2005), *perm. app. denied* (Tenn. Oct. 31, 2005). Accordingly, we conclude that the trial court properly dismissed the petition. The Petitioner is not entitled to *habeas corpus* relief.

### III. Conclusion

5

After a thorough review of the record and the applicable law, we affirm the trial court's judgment.

_____ s/ ***Robert W. Wedemeyer***

ROBERT W. WEDEMEYER, JUDGE